REINHARD, &c.
*vs*
BANK OF KENTUCKY, &c.

settlement of the accounts according to the principles of this opinion.

*Geo. Smith* for plaintiff: *Hanson* for defendants.

CHANCERY.

## Reinhard, &c. *vs* Bank of Kentucky, &c.
## Reinhard's assignee *vs* Danforth, &c.
## Bridges *vs* Same. Clarke *vs* Same.
## Reinhard *vs* Same. Same *vs* Same.

*Case 50.* WRITS OF ERROR TO THE LOUISVILLE CHANCERY COURT.

*Conveyances. Fraudulent preferences. Bankruptcy.*

*Oct 21.* JUDGE BRECK delivered the opinion of the Court.

On the 31st January, 1842, Paul and Martin Reinhard, merchants or grocers in the city of Louisville, executed three deeds, which were on the same day duly acknowledged and admitted to record.

Mortage from P. & M, Reinhard to J, Reinhard.

1st. A mortgage to John Reinhard, to secure a debt due him from the mortgagors, and to indemnify him as their sureties in certain liabilities.

To Susannah Reinhard.

2nd. A mortgage to Sussannah Reinhard, the mother of the mortgagors, to secure the payment of what might be due her from them as the administratrix of her deceased husband, Jacob Reinhard, and also to secure the heirs of said Jacob; other than the mortgagors, for rents received by the mortgagors upon the estate of said Jacob.

Deed of trust to John Reinhard and J. Danforth.

3rd. A deed of trust to John Reinhard and Joseph Danforth, conveying and transferring to them a large amount of property, real and personal, and choses in action, and including also the property, subject to the liens created thereon, embraced in the two first deeds. By this deed the creditors of the grantors were provided for in classes, preferences being given to some over others. The trust was accepted and the deed executed by the Trustees.

On the 16th February following, John B. Danforth, a creditor of the grantors and surety for them in a large amount, and provided for in the deed ef assignment, exhibited his bill in chancery, asserting his claim and set-

ting forth his liabilities for them, attacking the three deeds as fraudulent and void, and attaching the property embraced in them. Subsequently all the creditors provided for in the deed of trust—the mortgagees in the two first deeds—the Trustees and the grantors were made parties and brought before the Court. The Bank of Kentucky, Bank of Louisville, Northern Bank of Kentucky, Bank of Indiana, and Louisville Savings Institution, and some other creditors answer, make their answers cross bills, assert their claims and attack the deeds as fraudulent upon the same ground urged by the complainant, Danforth. Other creditors answer, accept the provisions, insist upon its validity, and claim that their interests may be protected under the deed of trust.

All the allegations of fraud are denied by the grantors and the mortgagees. The answer of John Reinhard is made a cross answer, and relief sought under the mortgage to him. The answer of Jacob Reinhard is also made a cross bill, and relief sought under the mortgage to Susannah Reinhard, himself and others.

The Chancellor being of opinion that all the deeds were fraudulent, made to hinder, delay, and defraud creditors, annulled and set them aside, and decreed a distribution of the proceeds of the attached property, or such portion thereof as had been sold, among the attaching creditors.

To reverse that decree the Reinhard's, the mortgagees, and the creditors, claiming the benefit of the deed of assignment, and the Trustees, have brought the case before this Court.

The main question for our determination is, whether the Chancellor was right in annulling and vacating the deeds.

His opinion is one of great length and ability, but in much of the reasoning and some of the legal positions asserted, we do not concur. Nor do we concur in his conclusion that the deeds or either of them, are fraudulent and void.

In regard to the deed of trust, there is no question that the persons for whose benefit it purports to have been made, are *bona fide* creditors of the grantors. No delay

Answers of defendants, grantees in the deeds, made cross bills.

Decree of the Chancellor.

Questions for decision.

Reinhard, &c.
*vs*
Bank of Kentucky, &c.

or retention of possession or use by the grantors is reserved, and being made to secure *bona fide* creditors, it was upon a valid consideration.

But it is contended all these deeds were executed at the same time and secretly, the deed of trust in particular, upon the mere motion of the grantors, without consultation with their creditors, although many of them resided in Louisville, where they were executed, and that unjust priorities are given to a portion of the creditors. We find no evidence in the record that their execution was marked by any peculiar circumstances. They were acknowledged and lodged in the office for record the day they bear date. It is true it does not appear that creditors provided for in the deed of trust, were consulted, or that the execution of any of the deeds were contemplated, except by the Trustees, one of whom was a surety, if not a creditor, and some of the mortgagees. It is also true that preferences are given to a portion of the creditors.

But we understand the principle to be fully recognised by the decisions of this Court, that it is no ground, certainly not sufficient, to invalidate a deed, made for the benefit of creditors, that it was made without their request or knowledge and that it gives priorities to some over others. It was so held in the Bank of the *United States* vs *Huth*, (4 *B. Monroe*, 423,) and in other cases.

But it is further urged as a circumstance indicative of fraudulent purpose and intention that these deeds were executed on the day before the Bankrupt law went into operation and in contemplation of bankruptcy. What effect this fact would have had upon the deeds or grantors under that law in a tribunal having appropriate and peculiar jurisdiction for its administration, we are not called upon to decide. Even conceding, as contended, that had the deeds been executed a day later, the grantors, by timely and appropriate proceedings before the proper tribunal, might, under the Bankrupt law, have been forced into involuntary bankruptcy, and a *pro rata* distribution of their assets decreed among their creditors, still we do not perceive that *that* fact can or ought to affect their validity.

That deeds for the benefit of creditors were made without their request or knowledge, and gave priority to some over others are not alone, sufficient ground from which to infer fraud.

The fact that deeds for the benefit of creditors were made the day before the bankrupt law went into operation, cannot affect their validity in a suit by creditors in this Court.

If the grantors, as we have seen, had a legal right to make such deeds and give preferences to a portion of their creditors, we think they had a right to select a time to make them, when they would not be controlled or affected by the Bankrupt law, and that such selection would not be evidence of fraudulent purpose or intention.

But as evidence that these deeds were made to hinder, delay and defraud the creditors of Paul and Martin Reinhards, a statement made by them in April 1841 to the Bank of Kentucky and the Bank of Louisville is particularly relied upon by the Chancellor and urged by counsel, with great zeal and apparent confidence, upon the consideration of this Court. That statement accompanied on application to each of those Banks for a loan of four thousand dollars, and purports to exhibit their assets and liabilities showing the former to be near eighty two thousand dollars and the latter about forty two thousand, and leaving a surplus of assets of forty thousand. The loan was obtained from each of the Banks and paid according to the terms thereof at the expiration of four months. The grantors in their answer regret the error, into which they were led in making this statement and admit that as to their liabilities it was not a true representation of their condition at that time. That, although the list of their assets as to the items composing it was substantially correct, yet the value thereof was estimated too high, and their liabilities at much less than the actual amount. The amount of liabilities according to the schedule annexed to their deed of assignment including the amount in the deed to John Reinhard besides any balance that may be found due the administratrix and heirs of Jacob Reinhard is about ninety thousand dollars. The amount of assets is not ascertained, but will no doubt fall far below the estimate in their statement to the Banks.

As to their liabilities as exhibited in the schedule accompanying the deed of trust, there seems to be no question as to its correctness. But it is urged that the amount of their liabilities have increased by their having borrowed large sums of money since their statement to the Banks, which they are fraudulently withholding and

REINHARD, &c.
*vs*
BANK OF KEN-
TUCKY, &c.

concealing. In answer to this charge they exhibit in their answers a statement, showing their liabilities at the close of a former partnership in the dry goods business, and also monthly statements from the time they commenced business as grocers in October 1840, to the time these deeds were executed, showing the money received and from what sources and how and in what manner disbursed; the notes, which they had renewed for money borrowed and when each loan commenced, and they offer to exhibit their vouchers and books in support of their statements. But they are not called for, nor is there any testimony tending to invalidate their statements except their previous one to the Banks. As they state minutely the dates and sources from which cash had been received, the dates and manner and objects of disbursing it and the dates and consideration and individuals, to whom notes had been executed, great facilities were thus afforded for detecting errors in these statements, if they existed, and exposing them as fraudulent. But no effort of the kind has been made and in the entire absence of testimony tending to disprove them, we think they should go far in rebutting any inference that the cash, which they have received since and including their loan from the Banks, they have failed to appropriate in payment of their debts, but are fraudulently concealing.

Schedule made to Banks stating assets at $80,000 liabilities at $40,000, by persons soliciting large loans, made 9 months before deeds of trust, and unconnected with them, tho' false and fraudulent— Held not to invalidate deeds made to secure *bona fide* creditors.

But conceding that the statement made to the Banks was not only improper, but false and fraudulent, still the transaction was nine months before the execution of these deeds and unconnected with them. We are aware of no rule of law or reason, which would invalidate them, because the conduct of the grantors on that occasion was improper and even fraudulent. Suppose the inference is authorized from that transaction as contended that they are capable of acting fraudulently, still we cannot admit that such an inference in that case can affect the rights of *bona fide* creditors under these deeds.

Nor would it affect the rights of preferred creditors that the grantees had money and were

Nor would the rights of creditors be affected even if the facts were conceded, that the grantors had money which they were concealing from their creditors. The controversy is really not with them. They have no interest in it. Their creditors are the parties who com.

plain and resist the effort to deprive them of the benefit of these deeds.

But it is further insisted that the trust deed contains false recitals. That it recites that the grantors have sustained heavy losses in their trade, and that no such losses are established. It is true there is no evidence of any particular special losses by fire or flood, or otherwise. But although there may have been no losses of that kind, yet we can easily imagine that the general result in mercantile business might, notwithstanding, be disastrous and attended with heavy loss. Bad management, bad debts, and a high interest upon money paid in the mode of raising it by drawing and re-drawing bills of exchange, as appears to have been the practice of the Reinhards, might, in the end, prove as fatal and destructive to commercial or mercantile prosperity, as fire or flood.

But the answers of the Reinhards and their statements, show heavy losses in their mercantile business; they deny expressly that they have borrowed money except for the payment of their debts and the prosecution of their business; they deny the allegation that they have not fully and fairly exhibited and delivered up all their assets, and we think it is not shown that they have other means than they have surrendered. We are not satisfied that the recital in the deed is false, or that it was important that other testimony should have been adduced in support of it.

In answer to the objection that John Reinhard was not a proper person to have been selected as a Trustee, it may be replied that there is no evidence that both the Trustees were not entirely responsible and qualified for the execution of the trust. And it may here be remarked, that prior to the exhibition of complainant's bills, steps had been taken by the Trustees for the sale of all the merchandize embraced in the deed.

It is also urged as an objection, that the grantors had continued to borrow money before the execution of the deed, and even on the day it was executed. For the sums thus borrowed, or at least portions of them, including the last named, priorities appear to be given in the deed. An effort to sustain themselves and to struggle on in a situation so apparently hopeless, certainly cannot be

REINHARD, &c.
vs
BANK OF KENTUCKY, &c.

concealing it from their creditors in a suit between preferred creditors and general creditors

Mortgage recites losses—it is not evidence of fraud that losses by fire or flood are not proved; losses may be by other means, they may be by bad management, bad debts, high interest paid, in drawing and re-drawing bills of exchange in mercantile business, which may prove as distructive as losses by fire or flood.

Though persons in laboring circumstances borrow money, even on the day they made the assignments, as the lenders were preferred in the deeds, a *bona*

REINHARD, &c.
vs
BANK OF KEN-
TUCKY, &c.

*fide* conveyance will not be vacated for that.

Though it is not shown that the creditors had *formally* accepted a deed of trust before bill to vacate it was filed, which was 16 days after its execution, yet the Trustees having accepted, it is valid, and the presumption is that creditors had accepted it, till the contrary is shown.

Failure to prove debt due mortgagee will not affect his right to indemnity for other debts paid as surety, where such suretyship is not controverted.

It is no objection to a mortgage conveying the interest of heirs in the estate of their ancestor to indemnify the administratrix, that no settlement was made before the deed was executed showing the precise interest in the estate; the Chancellor should, in such case, refer to a Master, that the amount may be ascertained.

Member of a firm paying debts for the payment

approved, but as we are not satisfied the effort was made with intention to defraud their creditors, we cannot regard it as sufficient reason for annulling the deeds.

Lastly, It is objected that none of the creditors had accepted the deed before the complainant exhibited his bill. In reply to this objection, it may be remarked, that the deed was accepted by the Trustees. They undertake to carry out its provisions for the benefit of the creditors. No formal acceptance by them is required. The presumption is, that they do accept till the contrary appears. No objection appears to have been made till the complainant exhibited his bill, which was within sixteen days after the deeds were executed. The fact that none of the creditors had then formally accepted its provisions, cannot, we think, in any view of the case, be rendered an available objection by the complainants.

In regard to the mortgage to John Reinhard, it is objected that no proof is adduced in support of the indebtedness of the mortgagors to him, as set forth in the mortgage. His liabilities as surety for them, are stated specifically in the mortgage, and so is the debt due *himself,* and how it originated. Although the debt is not proved, yet his liability as surety is not controverted, and a portion of which he seems already to have discharged. The mere failure to adduce proof as to his own debt, will not impair his right to indemnity as surety.

The deed to Mrs. Reinhard is to secure what may be found due on settlement, from the mortgagors to the administratrix and heirs of Jacob Reinhard. Their interest in the estate alone, is mortgaged for that purpose. It is no objection to the deed that the settlement was not made before the deed was executed. From the character of the parties and the nature of the transactions between them, Mrs. Reinhard having had great confidence in her sons, who she alledges, had kept the accounts, the matter, we think, should have been referred to the Master, that the accounts might have been audited under the scrutiny of creditors, and subject to the control of the Court.

In regard to the cross bill of Bridges, so far as he seeks to reach specific property or choses in action, transferred by Baker in trust to P. & M. Reinhard, for the payment

of the debts of the firm of Baker & Bridges, and which the Reinhard's had undertaken, but failed to pay, but which, or a portion thereof, Bridges had been compelled to pay, it should have been referred to the Master to settle the accounts between Baker and the Reinhards, and if any of the property transferred by Baker remained in the possession of the latter when they made the trust deed, and it was not necessary for their indemnity for their disbursements for and claims upon Baker, it should have been decreed, or the proceeds thereof, or such portion as might be necessary for the indemnity of Bridges. He may upon the return of the cause, show that the deeds of the Reinhards embraced specific property or choses in action, which had belonged to the firm of Baker & Bridges, and that he had a superior equitable lien thereon, for debts of that firm, which he had been compelled to pay.

REINHARD, &c.
*vs*
BANK OF KENTUCKY, &c.

of which specific property was conveyed to a Trustee, has a lien prior to that of the grantees of the Trustee.

The Assignee in bankruptcy of P. & M. Reinhard, will have no right, as the record now stands, to administer their assets embraced in either of the deeds, unless there should be a surplus after the claims of the creditors provided for are discharged.

*Bona fide* creditors, grantees in a deed, have a lien prior to Assignee of bankrupt—his right attaches only to the surplus.

In conclusion, we are of opinion the three deeds are valid, and that the decrees of the Chancellor, so far as they annul said deeds and direct a distribution of the proceeds of the property among the attaching creditors, are erroneous and must be reversed, and the cause remanded with directions to dismiss the original bill of the complainant, Danforth, and all the cross bills of the other attaching creditors, so far as they seek to invalidate said deeds on the ground of fraud, but to retain them, should the complainants desire it, for the purpose, as all the parties in interest appear to be now before the Court, and the proceeds of so much of the trust and mortgaged property as has been sold, under the control of the Chancellor, of settling the rights of all the parties and distributing the proceeds of the estate embraced in said deeds, according to the provisions thereof, and to effect this object, further and appropriate pleadings will be permitted.

Decree reversed, &c.

*Loughborough* for plaintiffs: *Guthrie and Fry & Page* for defendants.