## ESTES *v.* GUNTER.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF MISSISSIPPI.

Submitted May 3, 1887. — Decided May 27, 1887.

In Mississippi an insolvent debtor may make a general assignment of his property for the benefit of his creditors, with preferences.

A deed by an insolvent debtor in Mississippi to secure sureties on his note made in advance of, and in contemplation of, a general assignment for the benefit of creditors is valid under the laws of that state, although containing a provision that the grantor shall remain in possession until the maturity of the note.

A payment by an insolvent debtor of a debt due to his wife, in advance and in contemplation of a general assignment for the benefit of creditors, does not invalidate the subsequent assignment.

The taking of supplies and of money for family use from the store of an insolvent trader by his wife does not invalidate a general assignment for the benefit of creditors, subsequently made.

In March, 1882, one S. H. Gunter, a merchant who had been for many years engaged in business at Sardis, in Mississippi, was largely indebted to the complainants and others; and, being unable to pay them in full, made a general assignment of his property of every description, except such as was exempt from execution, to one S. G. Spain, as trustee, for their benefit, which was recorded the same day. The assignment preferred certain of the creditors, who were named in a schedule annexed. Among them were the complainants, Estes, Doan & Co., merchants at Memphis, in Tennessee. The

sum due them was $13,587.68, but they were preferred only to the amount of $10,000. Their claim grew out of advances of cash and supplies furnished to Gunter. There was no question as to its amount or justice. On the same day and immediately preceding the execution of the assignment, Gunter executed a deed of a house and lot in Sardis to one J. G. Hall, as trustee, to secure the firm of Boothe, Rice & Carleton, who were sureties upon his note, held by the bank of Sardis, for $1000, due on the first of December, 1882. This deed was to be void if the note was paid at maturity; otherwise the trustee was, on the written request of the sureties, to take possession of and sell the property at public auction, after due notice, and apply the proceeds to its payment. Any surplus was to be returned to the grantor. If the property should at any time "become endangered" as a security, the trustee was at liberty to take possession of and hold it until the debt was discharged by payment or by sale of the property, but until demanded by the trustee the grantor was to hold the same subject to the deed of trust. This deed was also recorded on the same day and a few minutes before the assignment.

At the same time Gunter transferred and delivered to several of his clerks and employes certain notes and accounts in payment of his indebtedness to them. It was also in proof that Gunter was hopelessly insolvent; that for twelve days before he made the assignment he knew of his condition and contemplated making the assignment; that during this time he gave to his wife the sum of $900 in payment of an alleged indebtedness to her, and she was permitted to take money from the drawer of the store, and that more goods than usual were carried from the store to his house.

Soon after the assignment and deed of trust were recorded, the defendants, Bickham & Moore, who were also creditors of Gunter, sued out an attachment against him in the Circuit Court of the United States for the Northern District of Mississippi, which was levied on the property assigned by Gunter to Spain as trustee. This attachment was followed by attachments of other creditors, and the property was seized by the marshal. Spain, the assignee, thereupon renounced his trust

and refused further to act. Thereupon the complainants, Estes & Doan, who were much the largest creditors of Gunter, filed their bill against Bickham & Moore . nd other attaching creditors, setting forth the assignment of Gunter to Spain, his debt to them, the several attachments levied, and the refusal of Spain, the assignee, to act, and praying the court to appoint a trustee in his place, to direct the enforcement of the trust, and to enjoin the attaching creditors from further proceeding with their suits.

Bickham & Moore and other defendants answered, charging that the assignment was fraudulent and void, but admitting that Spain refused to act as trustee or assignee. Proofs were taken, and upon the hearing the court held that the assignment was fraudulent and void, and accordingly entered a decree dismissing the bill with costs. From this decree the complainants appealed to this court.

*Mr. Luke E. Wright* for appellants.

*Mr. H. M. Sullivan* for appellees, Bickham & Moore.

*Mr. W. V. Sullivan* for appellees.

*Mr. Edward Mayes* for appellees.

Treating the deed of trust as a part and parcel of the assignment, there are four distinct provisions of the trust deed, any one of which, being considered part of the assignment, will avoid it:

*First.* Speaking of the property conveyed, it says, "until demanded by the said trustee, said party of the first part shall hold the same subject to this deed of trust." By the terms of the deed, a demand by the trustee before the 1st day of December following, (that being the date of the secured debt's maturity,) was not possible except on the contingency that the property should become endangered as a security; in which event the trustee was empowered (not required) to take possession. Here is a direct retention to his own use by the assignor, for a period of at least eight months, of a very material

part of the property assigned, and the assignment is thereby avoided. Burrill on Assignments, § 203; *Harman* v. *Hoskins*, 56 Mississippi, 142.

*Second.* Speaking of the disposition of the proceeds of sale by the trustee, the deed says, " and if there be a surplus, such surplus shall be returned to the party of the first part " — not to the assignee. The two instruments being in fact but one transaction, the assignee consents that the balance shall 'be paid not to him, but to the assignor. The very debt secured by the trust deed is also preferred in the assignment, so that any distribution to the creditors under the trust deed would have enlarged the surplus reserved to the grantor.

*Third.* Speaking of the conditions under which the trustee may sell, the deed says, " Should the party of the first part promptly pay the above stated indebtedness on or before the 1st day of December, 1882, then this instrument to be void; but, in default thereof, the said trustee, at the written request of the party of the second part, or their legal representatives or assigns, shall take possession," &c., &c. Here it is not the default which authorizes the trustee to sell, but the request of the creditor, for the making of which no limit of time is fixed, or any security given to the general creditors (or to the purchasers under any assignee's sale) against an indefinite postponement. The whole matter is committed absolutely to the creditors' discretion, with 12 per cent interest accumulating, a very satisfactory income to them, so long as there was any margin of value whatever in the property, as, in fact, the property was not sold until three months after it might have been. *Mayer* v. *Shields*, 59 Mississippi, 107; *Burd* v. *Smith*, 4 Dallas, 76; Burrill on Assignments, §§ 214 to 217.

*Fourth.* This last provision avoids the deed and the assignment for another reason: it hinders the bank of Sardis itself in the collection of its debt. The bank could not collect through the assignee, because the property is put out of his hands: nor can it direct the trustee, since by the very terms of the trust the direction to sell must be given not by the creditor bank, but by the joint action of all the sureties. No sale could be made except by their consent, or by an appeal to the courts. We can-

not speculate on the possibility that the sureties might act properly; the deed clearly puts it in their power to withhold the property from the creditor, and is most clearly, for that reason, calculated to hinder and delay him in his collection.

This assignment was executed in Mississippi by a Mississippi debtor to a Mississippi assignee. It is, therefore, a Mississippi assignment, the validity of which must be tested by the Mississippi law. The fact that the appellants are citizens of Tennessee does not alter this rule. *Livermore* v. *Jenckes*, 21 How. 126.

The rule is well settled in Mississippi that the assignee in an assignment to secure antecedent debts is not a *bona fide* purchaser for value, and that if for any reason the assignment is fraudulent and void as to the grantor, the beneficiaries cannot take under it, since it is also void as to them. *Craft* v. *Bloom*, 59 Mississippi, 69.

These questions, arising under §§ 1293 and 1294 of the Mississippi Code of 1880, the decision of the Mississippi Supreme Court on this point will be deferred to by this court according to the well-settled rule.

Mr. Justice Field, after stating the case as above, delivered the opinion of the court, as follows:

It appears from its opinion in the record, that the court below held the assignment of Gunter for the benefit of his creditors to be fraudulent and void on these grounds: 1. Because of the execution of the trust deed to Hall to secure the sureties on his note held by the bank of Sardis; 2. Because of the payment of the $900 to his wife, shortly before the assignment, for a debt which he claims to have owed to her; 3. Because he permitted her to take money from the cash drawer; and 4. Because more supplies than usual were taken from the store to his house shortly before the assignment.

The answer to these objections is readily given, and it appears to us conclusive. The laws of Mississippi allow an insolvent debtor to make a general assignment of his property in which one or more of his creditors may be preferred to others.

The assignment is not invalid, therefore, because of the preferences given. In *Eldridge* v. *Phillipson*, 58 Mississippi, 270, 280, the Supreme Court of that state said: "The right to make a preference results from the dominion which the owner has over his property; it is a part of his proprietorship. The law has not said he shall divide his estate ratably among his creditors. It has left to him the discretion to act as he wills, provided only he acts with the honest intent to pay a valid debt, and does not, under cover of such a disposition, stipulate for a benefit to himself."

Nor did the deed to Hall to secure the sureties on the assignor's note affect the validity of the assignment, though made in contemplation of it. Such security might have been provided in the assignment itself. The assignor had a right to use his property to protect parties who had become his sureties, as well as to pay existing debts. Until the assignment he could dispose of his property in any way he may have thought proper, so that he did not thereby defraud any of his creditors.

The court below seems to have concluded that the two instruments, the assignment and the deed to Hall, should be considered together, and, as the deed contained a proviso that the grantor was to remain in possession of the property until the note matured, and the sureties should request the trustee to take possession of the same, there was such a reservation for the benefit of the grantor as rendered the assignment invalid. The deed was in fact a mortgage of the property to secure against a prospective liability, and in such cases it is usual for the grantor or mortgagor to remain in possession of the property until the maturity of the obligation and a sale of the premises. Standing by itself, the deed was not open to any serious objection. And even that reservation was defeated by the assignment, which included the property in question with other property of the assignor, and provided that the assignee should take possession of the same and sell and dispose of it with all convenient diligence. The assignment was subsequent to the deed and carried all that could in any way be considered as a benefit secured by the deed to the assignor.

The creditors were not, therefore, in any way hindered or defrauded by the alleged reservation.

There is nothing in Gunter's payment to his wife of the $900 which can affect the validity of the assignment. Gunter's testimony is all that there was on the subject, and he testifies that she received the money from her grandfather, and that he borrowed it from her and used it. His statement is not contradicted. Under these circumstances he was not blameworthy in paying to his wife the amount he had used belonging to her. But, as counsel well observes, if that payment were fraudulent, it would not vitiate a subsequent assignment. A fraudulent disposition of property does not of itself impair a subsequent general assignment. The assignee may sue for its recovery, and, if successful, it will be for the benefit of the creditors precisely as if it had been included in the assignment. *Wilson* v. *Berg*, 88 Penn. St. 167; *Reinhard* v. *Bank of Kentucky*, 6 B. Mon. 252.

The same observation may be made as to the alleged taking of money by Mrs. Gunter from the cash drawer, and of his sending supplies from the store to his house. She was a clerk in the store and took the money from the drawer in the course of business, and supplies for Gunter's house were generally taken from the store. It was quite natural, therefore, that he should take needed supplies before the assignment was executed. There is no evidence that the supplies were excessive or unreasonable, but even if they were, that fact would constitute no ground for setting the subsequent assignment aside.

From a consideration of the whole case, we are clear there is no just ground shown by the record for disturbing the assignment. It follows that the decree below must be

*Reversed, and the cause remanded for further proceedings in accordance with this opinion; and it is so ordered.*