Daniels, J.
The plaintiff is a receiver appointed in supplementary _ proceedings taken against the defendants, Henry 0. Nichols and Cora I. Nichols, as judgment-debtors of the firm of John B. Ellison & Sons. The action has been brought by him to set aside a general assignment made by these two debtors to the' defendant, Edgar Pool, for the benefit of creditors. The assignment was alleged to be fraudulent and made with intent to hinder and delay the creditors of the assignors.. In making the assignment Hiram Pool was preferred for moneys, which, he as well as the debtor, Henry 0. Nichols, testified had been loaned by Pool to the firm. His testimony was to the effect that a balance of $1,659.77 remained, owing and unpaid to him at the time of the assignment, and no good reason appears from the evidence upon the trial for doubting the correctness of this statement. But it was further made to appear that as moneys were advanced by him to the firm, assign *573 ments of accounts were made by the firm to him for the re-imbursement of such moneys and that a large amount of accounts were in this manner in his hands, or under his control, at the time when the assignment was executed. But this fact does not require the conclusion to be adopted that the preference made in his favor in the assignment was fraudulent, for it does not appear that it was thereby intended to do any more than to provide for the payment of the indebtedness owing to him. And so far as that might be paid out of accounts assigned to him the preference would be reduced. And if his indebtedness should not be wholly paid in that manner, but should be in part paid under the preference, whatever accounts might then remain in his hands would become the property of the assignee under the assignment. It was not important in the effect to be given to the dealings of these parties, whether this creditor should be paid out of the assigned accounts or by means of the preference itself, for in neither event could he possibly be entitled to or receive more than the amount due and owing to him from the assignors. Upon this branch of the case the court was fully warranted in concluding that no fraud in the assignment had been established.
A further preference was made for the sum of $2,601, in favor of Mrs. T. H. Beeckman. This was also for money stated to have been advanced by way of loans to the assignors in the course of their business, and an account was kept upon their books crediting to her the moneys stated to have been advanced. The account was opened with her husband T. W. Beeckman, who was the person from whom the assignors received the money, but shortly before the assignment it was changed by adding “Mrs.” to the name in which the account stood upon the books. This is relied upon as a fact indicating the account to have been either wholly or in part fictitious. But by the evidence of Mr. Beeckman, and of Henry C. Nichols, it has been stated that this change in the account was made by the direction of Beeckman himself, when he observed that in the books of the assignors it had been opened and kept with himself. And that evidence, as the court appears to have acted upon it as worthy of credit, divested this circumstance of every feature of suspicion. The account included other items, than those of loans of money, inserted as having been obtained from Beeckman. A considerable portion of the account had no relation to such loans, but it was made up of other credits and charges. From the manner in which it appeared, and other evidence given during the course of the trial, it is urged in support oí the appeal, that the judge presiding at the trial was unwarranted by the evidence, in concluding, *574 as he did, that the loans had, in fact, been made by Mrs. Beeckman, through the agency of her husband, to the assignors. The testimony of Mr. Beeckman and Mr. Nichols, however, was positive that the moneys to the amount of $3,395, had been loaned to the firm during the year 1883, and the early part of the year 1884. And this testimony was partially corroborated by that given by the witness, Hyatt, who was a cutter in the employment of the firm of the assignors, stating that he remembered Beeckman bringing in money on more than one occasion, and that it was used to pay for the help on Saturday evening. There was no direct denial of the fact that these moneys had been loaned and advanced to the firm by any person sworn or examined as a witness upon the trial. But it appeared from a statement made by Nichols to the firm of Ellison & Sons, on the 1st of March, 1884, that he then represented that there was no indebtedness against the firm for borrowed money. This representation was made in writing, subscribed by himself, and also with the name of his wife, by him as her attorney, and it had a direct tendency to throw discredit upon his evidence that the money had in this manner been loaned and advanced to the firm. But neither this contradiction of the evidence of Mr. Nichols, nor any other testimony in the case, went so far in the way of impeaching his credit, as to render it the duty of the court to reject his statements as unworthy of belief.
It was still a question to be determined by the tribunal hearing and seeing the witness, whether, notwithstanding this misrepresentation, and another contained in a letter concerning the encumbrances upon the property situated in Jersey City, he was still entitled to be believed in what he said concerning these loans. Mr. Beeckman also testified to the times and amounts when the moneys were stated to have been advanced to the firm. He gave the items and the dates, which were mostly between the commencement of the month of July, 1883, and the 1st of October of the same year, there being but two amounts stated to have been advanced in March and February of the year 1884. These moneys the witness swore were the moneys of his wife, and upon her own examination as a witness her testimony was that they had been supplied to her husband from her accounts in three different savings banks. But, during the time the moneys are stated to have been advanced in 1883, no amounts whatever were drawn by her from either of the three savings banks, while her testimony was that the money was obtained from the banks to be invested by her husband with the firm of Nichols & Co., and was delivered .to him to be used in that way. She, however, did not testify to any dates when the money was ob *575 tained in this manner. And as she, on the 6th of January, 1883, did draw from the savings banks sums, aggregating $2,500, which are not stated to have been otherwise disposed of by her, the alleged loans may very well in large part have been made from this money. That, however, would not account for all the loans stated by her husband to have been made to the firm of Nichols & Co., but he added that he held, as her agent, second mortgages upon which moneys were obtained and used in the same manner. These mortgages are stated to have amounted to the sum of about $1,200, but how much was derived from them or so used he has not stated. There was, however, evidence presented in this manner from which as it was credited by the court, the conclusion is supported that, to the extent of the preference contained in the assignment in favor of Mrs. Beeckman, the firm was indebted to her. Where witnesses are contradicted in this manner their testimony is not required to be absolutely rejected, but it may be received and acted upon, if, notwithstanding the contradictions presented, it appears to have been candidly and truthfully given by the witnesses. And to the end of determining whether it has been so given or not, the court is required to consider their appearance, their manner of testifying and the general probability of their statements. And if no unjustifiable degree of dependence has been placed upon those advantages possessed entirely by the trial court, its determination as to the weight of evidence, cannot be set aside or disregarded on an appeal from a judgment depending upon it. Sherwood v. Hauser, 94 N. Y., 626.
The evidence of these witnesses was also corroborated by the fact that a chattel mortgage was executed and delivered by the debtor Cora I. Nichols to Beeckman on the 13th of September, 1883, to secure money loaned to the amount of $4,000. And it is not just" or reasonable to suppose that this mortgage would have been executed and delivered had it not been understood at the time that the firm was indebted for moneys loaned to it in this manner. This mortgage, through an intermediate assignee, was assigned to Mrs. Beeckman on the 18th of the same month. While the dealings of these parties were by no means free from suspicion, there was still sufficient proof presented to the court to sustain the judge presiding at the trial in his conclusion that this preference was made in good faith and for the payment of an indebtedness of the firm to the preferred creditor.
Cora I. Nichols, one of the judgment debtors and a member of the insolvent firm, was the owner of real estate situated in Jersey City, in the state of New Jersey, and she continued to be such owner to and including the time when *576 the general assignment was made. But this property was not taken possession of by the assignee under the assignment, but it was afterwards conveyed by deed to William H. Brill, to whom the firm of Nichols & Co. was indebted in the sum of $52.37. This conveyance to Brill was made with the understanding that he should convey the place to Samuel W. Lamberth, to whom the insolvent firm was also indebted in the sum of $856.50. Brill was paid the money owing to him, and he then, pursuant to the understanding, conveyed the land to Lamberth, who was to pay his own indebtedness out of the proceeds of its final sale and return the balance, whatever it might be, to Mrs. Nichols, in whom the property was vested. He afterwards sold it, realizing from the proceeds of the sale the amount of his debt and a balance of $348, which he returned to Mrs. Nichols in compliance with the arrangement which had been made.
These transactions are further relied upon as evincing a fraudulent intent in the making and delivery of the assignment, and the omission of this property .from the schedules afterwards made and filed. But as they followed and were not connected with the making and delivery of the assignment, they are not absolutely entitled to be attended with this effect. Estes v. Gunter, 122 U. S., 450.
They are circumstances, however, to be considered as having a bearing upon the probability of the assignment being fraudulently made. And an endeavor was'made to sustain them as legal under a statute of the state of New Jersey prohibiting the assignment containing preferences, as this assignment does.
By this statute it has been declared: “That every conveyance or assignment made by a debtor or debtors of his, her or their estates, real or personal, or both, in trust to the assignee or assignees for the creditors of such debtor or debtors shall be made for their equal benefit, in proportion to their several demands to the net amount that shall come to the hands of said assignee or assignees for distribution; and all preferences of one creditor over the other, or whereby any one or more shall be first paid or have a greater proportion in respect of his, her or their claim than another, shall be deemed fraudulent and void, excepting mortgage and judgment creditors, when the judgment has not been by confession for the purpose of preferring creditors.” And in the examination and construction given to it by the courts of this state it has been considered as invalidating assignments made in this state by insolvent debtors as to property owned within the state of New Jersey. Guillander v. Howell, 35 N. Y., 657; Eastern National Bank v. Hulshizer, 2 N. Y. State Rep., 93.
*577 These authorities followed very closely the language of the statute and decisions made declaratory of its effect by the courts of the state of New Jersey. They proceed on the legal rule, that the state in which real or personal property may be situated is not only invested with the authority of prescribing the manner in which it may be assigned or transferred, but of prohibiting that from being done in any other manner. This rule is supported by the cases of Green v. Van Buskirk (7 Wall. U. S., 139), Hervey v. Locomotive Works (93 U. S., 664), Warner v. Jaffray (30 Hun, 326, affirmed 96 N. Y., 248). And neither its existence nor its effect was denied in the decision of Ockerman v. Cross (54 N. Y., 29), where effect was given to a Canadian assignment for the reason that no law existed in this state preventing it from being operative upon property located here.
Following this statute as it was construed by the decisions already mentioned, this assignment would not be operative upon the property situated in Jersey City, and the owner accordingly would have the right to convey it to Brill upon the understanding or agreement stated to have been made in consideration of his indebtedness, and the further consideration that he should convey it to Lamberth to pay the indebtedness owing to him by the insolvent firm. To that extent certainly the property and its proceeds were devoted to the payment of the indebtedness of the firm. And it seems to have been done under the conviction, supported by the advice of counsel, that the assignment transferred no interest in this property to the general assignee. The parties appear to have acted, as the facts have been found by the court, in good faith in what they did for the disposition and sale of this property, and their acts induced in that manner cannot be made the foundation of impeaching the assignment previously made and delivered. The only part of the transaction capable .of being drawn in question was the payment of surplus by Lamberth to Mrs. Nichols, the preceding owner of the property. But that does not seem to have been done with any intent to hinder delay, or defraud creditors, but upon the supposition that as the property was exempt by the statute of New Jersey from the assignment, Mrs. Nichols still continued to be its owner and entitled to this surplus. And if the parties erred in this respecf, the error, as long as it was not prompted by. any fraudulent intent, cannot be made á ground of setting aside the assignment.
But decisions made by the courts of the state of New Jersey since those which were referred to in the case of Eastern National Bank v. Hulshizer have, to some extent *578 at least, restricted the broad language of this New Jersey statute, and have held its policy to be to invalidate assignments made in other states, only in favor of creditors in the state of New Jersey. This is the view which was adopted in Bently v. Whitmore (19 N. J. Eq., 462), reversing the decision of the chancellor following the more enlarged construction previously given to the statute as that is reported in 18 N. J. Eq., 366. And the decision of the-court of errors, subjecting the statute to this restriction, has since been followed in Receiver, etc. v. First National Bank of Plainfield (34 N. J. Eq., 450), Van Winkle v. Armstrong (41 id., 402), and Kimball v. Lee (8 Cent. Rep., 637). But this change in the tenor of the decisions in the state of New Jersey, affecting the construction of the statute, does not require this assignment on that account to be set aside. For, assuming that the insolvent firm could assign the real estate situated in Jersey City, subject only to the debts owing creditors in the state of New Jersey, this assignment was broad enough to be attended with that effect, for it assigned, all and singular, the real and personal estate, merchandise, books, debts, books of accounts, bills receivable, promissory notes, contracts, debts, dues, assets and demands of every nature, kind and description of the parties of the first part and of each of them, wheresoever such property, assets and effects may be or be situated, except such property as is by law exempt from execution. And that would include any real estate situated in another state which the assignors were empowered by law to assign through the instrumentality of a general assignment.. Whether this assignment was proved, or acknowledged, so-as to entitle it to effect as a conveyance under the laws of the state of New Jersey was not shown upon the trial. But, assuming that to have been the fact, and that the-, assignment conveyed this property to the assignee subject only to the rights of creditors in the state of New Jersey, it still does not follow that it can be set aside because of this subsequent interference with the property by the assignors. For such interference, succeeding the execution and delivery of the assignment previously made, as this-was found, from evidence asserting the fact, to have been made in good faith, will not render the instrument fraudulent or void, especially as such interference was prompted by the understanding that the assignment had no effect-upon this property under the statute of the state of New Jersey.
It was not necessarily fraudulent for the parties to deal with this property as they did, even though it was included within the assignment. What they did with it appropriated it, With the exception of the-surplusj to the payment of the *579 debts owed by the assignors,- and it was disposed of under the supposition that it might be conveyed and sold as it was, from the effect of the statute of New Jersey upon the assignment. A mistake so made by the assignors, and afterwards followed in the disposition of the property, as long as the assignment was sufficiently broad to include it, will not render this instrument fraudulent in judgment of law. The surplus, however, of $348 paid over by Lamberth to Mrs. Nichols would, under the latter construction of the statute of the state of New Jersey, belong to the assignee under the assignment, and it is for the courts of that state to determine the construction and effect to be given to this act. But by following this construction no more can now be secured by the assignee than this sum of money, unless in a proper action brought by him he may hereafter be able to set aside the conveyances which have been made of the Jersey City property, on the ground that he became en titled to it by the assignment, subject to the small indebtedness owing by the assignors in the state of New Jersey. Whether he may or not is no part of the case presented on this appeal. Here the sole question is whether the assignment should be set aside for having been made with the intent to hinder, delay or defraud creditors. But under the evidence and the facts which the court was permitted to find from it, this result cannot be reached, for not only the contested preferences are sustained, but the disposition of the Jersey City property has been tolerated and excused, as it could be, by the court.
Evidence was excluded upon the trial which it has been urged should have been received. This relates chiefly to three questions not allowed to be answered. By one of them Mrs. Beeckman was asked how she came to be possessed of the money which was in the bank. This was entirely immaterial as long as it appeared as a matter of fact beyond controversy that she did have the money. The' further question whether she had any other money or property than was shown by the three bank books was not at the time when it was put to the witness of any pertinency in the case, for it was after that her husband testified to holding the mortgages belonging to her from which he received money on her account. Nichols himself wrote a letter to Ellison & Sons on the 5th of May, 1884, which was shortly before the execution of the assignment, in which he represented the Jersey City property to be incumbered only to the extent of $3,500, while there was in fact another mortgage upon it for the sum of $1,300, and he was asked what he meant by writing that falsehood to Ellison. But there was no substantial error in excluding the answer to this question, for the statement of his meaning or ex- *580 planatiou could not have increased the weight or effect of the false statement the letter in this way was made to contain.
Neither in the exclusion of these answers, nor in any other ruling or determination of the court, has there been found any sufficient ground for interfering with the judgment recovered in the action. It should therefore be affirmed, with costs.
Van Brunt, P. J., and Brady, J., concur.