BAER et al. v. ROOKS et al., (DOYLE, Intervener.)

*(Circuit Court of Appeals, Eighth Circuit. May 23, 1892.)*

No. 55.

**1. TRIAL—INSTRUCTIONS—CHARGE IN WRITING.**
In civil actions in the Indian Territory the court cannot be required to reduce its general charge to writing. *Railroad Co. v. Campbell,* 49 Fed. Rep. 354, 4 U. S. App. 133, followed.

**2. FRAUDULENT CONVEYANCES—ACTION TO SET ASIDE—INSTRUCTIONS.**
In an action to set aside an alleged fraudulent sale of personal property an instruction that fraud is never presumed, but must be proved, is not reversible error because it fails also to state that fraud, like any other fact, may be proved by circumstantial evidence.

**3. SAME—ASSIGNMENT FOR BENEFIT OF CREDITORS—INSTRUCTIONS.**
In an action to set aside an assignment for the benefit of creditors an instruction that it is the duty of an insolvent debtor to make such an assignment is a statement of an abstract proposition, and is harmless error. *Sanger v. Flow,* 48 Fed Rep. 152, 4 U. S. App. 32, followed.

**4. ASSIGNMENT FOR BENEFIT OF CREDITORS—FRAUD—KNOWLEDGE OF ASSIGNEE.**
An insolvent debtor may transfer a portion of his property, at full value, to a creditor, in payment of a pre-existing debt, just before making a general assignment to a trustee for the benefit of his creditors; and, to invalidate the assignment for fraud, it must be shown that the trustee was cognizant of or participated in the fraud. *Emerson v. Senter,* 6 Sup. Ct. Rep. 981, 118 U. S. 3, followed.

**5. SAME—PREFERENCE—PARTNERSHIP—INFANTS.**
A person engaged in trade cannot by his own acts make infants of tender years his partners in business, but, if he is indebted to them, he may prefer them in making an assignment for the benefit of his creditors.

**6. SAME—FRAUD—PRIOR ASSIGNMENT.**
In an action to set aside an assignment for the benefit of creditors because the assignor had used a portion of his property in paying a pre-existing debt, it is not material to the issues involved that the assignor had also conveyed his entire property to the same creditor at 80 cents on the dollar, which conveyance had been rescinded upon the advice of counsel, and the parties placed *in statu quo,* before the execution of the assignment.

**7. SAME—FRAUD—BURDEN OF PROOF.**
An instruction that the burden was on the assignee to explain any diminution in the property of the assignor between the date of the conveyance which was rescinded and that of the assignment, was rightfully refused; for, although such fact might tend to show fraud, the assignee can only be required to account for the property he actually received.

**8. SAME—FRAUD—DELIVERY OF GOODS TO SECURE NOTE.**
The delivery of goods or value by the maker of a note, about to assign for the benefit of his creditors, to his surety thereon, to enable the latter to pay the note, is not such a fraudulent disposition of the assets as to invalidate the assignment, although the note was not due at the time.

In Error to the United States' Court in the Indian Territory.

Action by Adolph Baer, Simon Seasongood, and Lewis Bierman, trading as Baer, Seasongood & Co., against C. C. Rooks, William Rooks, and Agnes Rooks, trading as C. C. Rooks & Co., and Edmund H. Doyle, intervener. Verdict and judgment for defendants. Plaintiffs bring error. Affirmed.

The action was commenced by attachment on a stock of goods in the hands of Doyle, to whom defendants had made an assignment for the benefit of creditors; it being alleged that such assignment was fraudulent and void.

Statement by CALDWELL, Circuit Judge:

C. C. Rooks, under the name and style of C. C. Rooks & Co., was engaged in business as a merchant at McAlester, in the Indian Terri-

tory. Rooks represented to some of his creditors that two children he was raising, a boy and a girl, aged respectively 8 and 14 years, were his partners. This alleged partnership need not be further noticed. In February, 1890, Rooks owed between $23,000 and $30,000, and had a stock of goods which invoiced at cost and carriage between $19,000 and $20,000. At this time the indebtedness of Rooks to J. J. McAlester, including the sums for which McAlester was surety for Rooks, amounted to about $6,500. On the 27th of February, 1890, Rooks sold his stock of goods to McAlester at 80 cents on the dollar in satisfaction of the $6,500 due to McAlester, who was to pay Rooks the balance of the purchase price for the goods in three equal payments, in three, six, and nine months. The day or day after this sale was consummated, Mc-Alester was advised by counsel that he would probably have trouble with the other creditors of Rooks, and thereupon the sale was rescinded, and both parties placed back where they stood before negotiations were begun. On the 1st day of March, afterwards, Rooks sold and delivered to McAlester, out of his store, goods enough, invoiced at cost and carriage, to pay McAlester the $6,500 before mentioned. As soon as the goods sold to McAlester were taken out of the storehouse of Rooks, he executed and delivered a general assignment of all his property subject to execution to E. H. Doyle, as trustee, for the benefit of his creditors, with preferences to certain of his creditors who were named in a schedule annexed. Upon the delivery of the deed of assignment the assignee took possession of the stock of goods remaining in Rooks' storehouse. This deed of assignment was executed before the Arkansas statute on the subject of assignments for the benefit of creditors was put in force in the Indian Territory. On the 4th day of March the plaintiff in error sued out a writ of attachment against Rooks, in the name of C. C. Rooks & Co., for the sum of $572.59 and for $30 costs, upon the ground that they had sold, conveyed, or otherwise disposed of their property with the fraudulent intent to cheat, hinder, and delay their creditors. This writ of attachment, by direction of the plaintiffs, was levied by the marshal on the stock which Rooks had assigned to Doyle, as trustee, for the benefit of his creditors. In apt time, Doyle intervened in the suit of plaintiffs against Rooks, and claimed the goods attached, as trustee under the deed of assignment. The plaintiffs answered the intervening petition of the assignee, alleging:

"That the pretended deed of assignment is fraudulent and void as to the creditors of the said firm, because the said C. C. Rooks, J. J. McAlester, and E. H. Doyle, the intervener herein, about the time of the pretended execution of the said deed of assignment, the said C. C. Rooks, J. J. McAlester and E. H. Doyle, with the fraudulent intent to convert and appropriate a large amount of the assets of said firm for the benefit of J. J. McAlester and C. C. Rooks, agreed to and did deliver to the said J. J. McAlester a large amount of the goods and merchandise of said firm, of about the value of $15,000. That after the execution of the pretended deed of assignment the said C. C. Rooks, J. J. McAlester, and the intervener, E. H. Doyle, with the fraudulent intent to delay, cheat, and hinder the creditors of the said firm, and to convert the same to the use of the said J. J. McAlester, took from the said

stock of goods merchandise of about the value of $15,000.00, and delivered the same to the said J. J. McAlester, who converted the same to his own use."

The defendant Rooks traversed the affidavit for attachment. The issue on the interplea and the issue on the traverse of the attachment were tried together before a jury, who found both issues against the plaintiffs, who thereupon sued out this writ of error.

*Isaac H. Orr, H. L. Christie, N. B. Maxey,* and *G. B. Denison,* for plaintiffs in error.

*G. W. Pasco,* for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

CALDWELL, Circuit Judge, (*after stating the facts.*) The first error assigned is that the court refused to instruct the jury in writing before argument. We have already decided that the court is not required to charge in chief in writing. *Railroad Co. v. Campbell,* 4 U. S. App. 133, 49 Fed. Rep. 354. The statement is made in the brief of counsel for plaintiff in error that "the record in this case discloses the fact that the plaintiffs submitted to the court a series of instructions, and requested the court to give or refuse them before the argument;" but this is an error. What the record does show is that, "the evidence being concluded on both sides, the plaintiffs, by their attorneys, requested the court to instruct the jury, in writing, before argument, which the court refused to do, and to which refusal plaintiffs at the time excepted." This request and exception obviously relate to the charge in chief, and not to special requests asked by either side. The remaining errors assigned relate to the instructions given and refused. The court told the jury that "fraud is never presumed, but must be proved," and this was excepted to; and the ground now assigned for the exception is that the court did not in the same connection state that fraud, like any other fact, could be proved by circumstantial evidence. But no suggestion was made to the court at the time, and no request preferred, to that effect. It is the prevailing practice, in cases involving an issue of fraud in fact, for the court to repeat to the jury this trite scrap of judicial phraseology, and it is commonly followed by a statement that fraud, like any other fact, may be proved by circumstantial evidence; but it would be an unwarranted impeachment of the intelligence of the juries of this country to suppose that they do not have a knowledge of these common truths. Every man knows that fraud, no more than murder, trespass, or debt, is presumed against a man, and that fraud, as well as murder, trespass, or a debt, may be proved by circumstances as well as by the positive testimony of an eyewitness. When the court tells a jury that the burden is on a party to prove a given fact, it is not required to enumerate all the various kinds and degrees of evidence by which the fact may be proved, as that it may be proved by paper writing signed by the party, or by the oral evidence of eyewitnesses, or by the admissions of the party, or by circumstances. The jury knows, without being told so in terms,

that every fact and circumstance which the court permits to go in evidence before them is put there for their consideration in the determination of the facts of the case. If a party conceives that the evidence discloses any fact or circumstance which the law regards as a badge of fraud, or *prima facie* evidence of fraud, he may, if the court omits to notice it in its charge, prefer a request for an instruction to that effect.

The court charged the jury that it was the duty of an insolvent debtor to make an assignment of his property for the benefit of his creditors. A similar charge was considered by this court in *Sanger* v. *Flow*, 4 U. S. App. 32, 48 Fed. Rep. 152, and was held not to be a reversible error.

The court rightly told the jury that if they found the transfer and delivery of the goods to McAlester, in satisfaction of the debt due from Rooks to him, were made before the execution of the deed of assignment, that the validity of the deed was not affected thereby, and that " in order to vitiate the deed of assignment on the grounds of fraud the fraudulent intent must have existed, and the assignment was the means by which the fraud was effected, and must operate to the detriment of the creditors of the assignor, or reserve some benefit to the assignor himself. No subsequent act of the parties can affect or invalidate an assignment made in good faith." The plaintiffs have no reason to complain of this instruction. *Estes* v. *Gunter*, 122 U. S. 450, 7 Sup. Ct. Rep. 1275; *Hill* v. *Woodberry*, 4 U. S. App. 68, 49 Fed. Rep. 138. The charge was too favorable to the plaintiffs, in that it does not tell the jury that to render the deed void for fraud the trustee must have been cognizant of or participated in the fraud. *Emerson* v. *Senter*, 118 U. S. 3, 6 Sup. Ct. Rep. 981.

Rooks could not by his own act make infants of tender years his partners in business; and, if he was indebted to them, he had an undoubted right to prefer them in his assignment, as was done.

Several of the requests for instructions preferred by the plaintiffs related to the sale of the goods by Rooks to McAlester which was, upon the advice of counsel, rescinded, and the parties placed *in statu quo*, some days before the making of the deed of assignment or the suing out of the attachment. These are conceded facts, and the instructions, therefore, based on that annulled and rescinded transaction, were irrelevant to the issues to be tried.

The plaintiffs asked the court to charge that if Rooks paid to McAlester $5,000 in goods to pay a note for that amount, on which McAlester was surety for Rooks, before the maturity of the note, that would be a fraudulent disposition of the goods on the part of Rooks. The assignor had a right to use his property to pay debts to become due as well as those already due, and he had an undoubted right to protect parties who had become his sureties, whether for debts due or to become due. *Estes* v. *Gunter*, *supra*.

The plaintiffs asked the court to instruct the jury that it was "incumbent upon the defendant and intervener" to account for any diminution in the stock of goods between the date of their first sale to McAlester,

in February, and the date they were levied upon by the marshal, and, "if they have not done so to your satisfaction, you should find for the plaintiffs." This request has reference to the sale of the goods to Mc-Alester, which was rescinded *in toto* long before the assignment was made or the attachment issued. McAlester had possession of the goods one day under that sale, and then transferred them back to Rooks, who continued to sell and pay debts out of them until the deed of assignment was delivered to the assignee, from whom they were subsequently taken by the marshal. The instruction asserts, in effect, that if there was any diminution in the amount or value of the goods between the time they were sold to McAlester, in February, and the 5th day of March, when they were attached, the burden was on the intervener to account for the diminution, and that, if he failed to do so, his title under the deed of assignment was void. No such burden rested upon the intervener. The intervener is only required to account for the goods he received. He is not required to show, under penalty of a forfeiture of his title under the deed of assignment, what disposition the assignor made of other goods before the assignment was made, or to explain any diminution in the amount of the goods before they came into his possession as trustee under the deed. If there was any considerable diminution in the amount of the goods between the dates mentioned, it might have been a circumstance tending to support the truth of the affidavit for attachment. But, in the form in which it was asked, it was rightly refused, and cannot be made a ground of exception upon either issue.

We have looked very carefully through the record in this case, and see no error of which the plaintiffs can justly complain. The assignor seems to have done no more than to have exercised his undoubted right at common law to appropriate his property to the payment of some of his creditors to the exclusion of others. This right he could exercise before he made the assignment, as he did to some extent, and he could also exercise it by making an assignment giving preferences, as was done. Judgment affirmed.