JAMES A. COSTELLO, SHERIFF, V. HENRY CHAMBERLAIN.

FILED JANUARY 3, 1893.   No. 4857.

1. **Voluntary Assignments:** PREFERRED CREDITORS. A debtor in failing circumstances may lawfully prefer one or more of his creditors and secure such creditors by mortgage or conveyance absolute, provided the transaction is in good faith and not made with intent to defraud other creditors.

2. ———: CONSTRUCTION OF INSTRUMENTS TRANSFERRING TITLE TO PERSONAL PROPERTY.   An instrument in the form of a mortgage or bill of sale will not be held to be an assignment for the benefit of creditors unless it creates trust in favor of some person or persons other than the mortgagor or vendor.

3. ———: ———: RULE APPLIED.   H., a merchant in failing circumstances, with intent to prefer certain creditors, executed to C. a bill of sale of his entire stock of goods, the latter paying the preferred claims in full out of the consideration named in the bill of sale.   In an action of replevin by C. against the sheriff, who had seized the goods on an order of attachment in favor of an unsecured creditor, *held*, that inasmuch as C. is the only person beneficially interested in the transfer, it cannot be held to be an assignment for the benefit of creditors, and that it is immaterial whether the bill of sale was intended as an absolute sale or as a mortgage only.

4. **Evidence** examined, and *held* sufficient to sustain the verdict and judgment of the trial court.

ERROR from the district court of Hall county.   Tried below before HARRISON, J.

*Abbott & Caldwell*, for plaintiff in error.

*Thompson Bros., contra.*

POST, J.

This was an action of replevin in the district court of Hall county, the pleading being in the usual form.   Trial and judgment for the plaintiff below, whereupon the case was removed to this court upon petition in error.   The material facts are as follows:   For about a year previous to the 18th day of January, 1890, John W. A. Hoppel had been engaged in business as a general merchant in the town of Wood River.   On the day above named he was, it is admitted, in failing circumstances, his assets, aside from a homestead of small value, consisting of a stock of merchandise worth, according to the estimate of witness, from $1,400 to $2,000, with liabilities amounting to $2,864.   Among his creditors were certain parties residing at Wood River, mostly for money advanced, to-wit:   J. Bowen, $600; F. M. Penney, $100; The First National Bank of Wood River, $300.   Of the last named amount, $100 was on his unsecured note and $200 secured by the note of Mr. Bowen. The morning of the day named Bowen, after making an ineffectual effort to have Hoppel pay or secure the $600 due him, called upon the defendant in error, who was cashier of the bank above named, and of which he, Bowen, was a stockholder, and made some inquiry about the standing and credit of Hoppel.   The question of the value and cost of the goods was also discussed.   Hoppel followed Bowen to the bank, where he executed to Chamberlain an instrument in the form of a bill of sale, by which he conveyed to the latter his entire stock of goods for the expressed consideration of $1,600.   Chamberlain, at the

time, paid the full amount of the consideration named in
the bill of sale, as follows: Cash to Bowen, $600, being
the amount due from Hoppel; by paying and satisfying
in full the notes of Hoppel above named, $400, and the
balance, $600 in cash, to Hoppel.   Upon the execution of
the bill of sale, Chamberlain took possession of the goods
in controversy, which were seized by the plaintiff in error
as sheriff two days later to satisfy an order of attachment
against Hoppel in favor of Allen Brothers.

A question to which prominence was given at the trial
below, and also in this court, is whether the transaction is
to be treated as a sale of the stock of goods by Hoppel, or
whether the so-called bill of sale was intended merely as a
security for the $1,600 advanced by Chamberlain.   It is
claimed by the latter that he purchased the goods for the
consideration named, while the testimony of the former is
relied upon to prove that the transaction is but a mortgage.
This contention is supported by the fact that Hoppel, on
the delivery of the bill of sale, executed to Chamberlain a
note for $1,600.   The latter, however, explains the execu-
tion of the note last mentioned thus: In the purchase of
the goods in question he was acting in the interest of the
bank and the money paid was a part of its funds, and that he
insisted upon the note in order to balance his books until the
goods could be disposed of in order to avoid having them
appear as a part of the resources of the bank.   As the law
applicable to this branch of the case plaintiff requested the
following instruction: "You are also instructed that if you
find from the evidence that the bill of sale was made to
enable Chamberlain to dispose of the goods and out of the
proceeds pay Hoppel's indebtedness to the bank, to Bowen
and Peycke Bros., and that after such debts were paid any
part of the goods or their value was to be returned to the
said Hoppel, then such sale was void, and you should find
for the defendant without regard to what the intentions of
the parties or either of them might have been."

It is claimed that this case is within the rule stated in *Bonns v. Carter*, 20 Neb., 566, and that in refusing to give the foregoing instruction the trial court erred.   We have no occasion to consider the question of the effect of subsequent decisions upon that case as authority, since it is clear to us that it can have no application to the facts disclosed by the evidence in this.   The mortgage in that case was held to be void on the ground that it created an express trust in favor of third parties named therein and was, in contemplation of law, an assignment for the benefit of certain preferred creditors.   In this case there is no trust in favor of any third person.   Chamberlain, the defendant in error, is the only beneficiary of the contract, whether construed as a mortgage or a sale.   The claims of Bowen, Penney, and the bank were all satisfied in full out of the money advanced by him, and it is not claimed that he stood in the relation of trustee toward any other creditor.   An assignment for the benefit of creditors implies a trust in favor of some person or persons other than the assignor.   It was Hoppel's right to prefer the claims of these particular creditors, or of Chamberlain, who, to say the least, had succeeded to their rights. (*Davis v. Scott*, 22 Neb., 154; *Hershiser v. Higman*, 31 Id., 531; *Brown v. Williams*, 34 Id., 376; *Hamilton v. Isaac*, 34 Id., 709.)   It is immaterial, therefore, whether the contract should be construed as a sale or as a mortgage, for in either event the defendant in error would be entitled to the possession of the property in controversy as against other creditors, provided the transaction was in good faith within the definition frequently given by this court.   The trial court rightly refused the instruction in question.

2. The chief reliance of plaintiff in error is apparently upon the proposition that the transfer of the stock of goods to Chamberlain, by Hoppel, was in fraud of the other creditors of the latter.   He claims broadly that the officers of the bank, including the defendant in error, being aware

of the purpose of Hoppel to defraud his creditors, know-
ingly assisted him to place his property beyond their
reach, and that the transfer to him is therefore void.  The
facts relied upon to sustain the claim of fraud are as fol-
lows: Bowen, on the day in question, stated to Chamber-
lain, in substance, that Hoppel was in a bad fix and unable
to pay the $600 due him; that a collection in favor of
Lindsay & Co., of Omaha, against Hoppel had been re-
turned by the bank the day previous, and it then held for
collection against him a draft by Peycke Bros. for $5.50;
that the value of the goods conveyed greatly exceeded the
consideration paid.   Chamberlain testified, when asked on
cross-examination his reasons for buying the stock of goods,
that his object was to protect the bank and Hoppel's home
creditors.   It is admitted that Hoppel's account with the
bank was at the time overdrawn, but the amount of his
overdraft does not appear.   It is admitted that according
to an invoice taken January 1, preceding, the value of the
stock was $2,400, cost price, but it was not claimed, at the
time of the transfer to Chamberlain, that it exceeded
$2,000 in value.   On the other hand defendant in error
testifies that he had no knowledge that Hoppel was in-
debted for goods except to Lindsay & Co. and Peycke
Bros.   The amount of the draft returned to the former is
not shown by the evidence, nor does it appear whether it
was secured or not, or that it had ever been presented for
acceptance or payment.   It also appears that the draft of
Peycke Bros. was paid by Hoppel at the time of the con-
veyance, and the claim of Lindsay & Co. was subsequently
secured by mortgage on his homestead.   Hoppel, who tes-
tifies with apparent candor and fairness, on cross-examina-
tion says:

Q. Can you tell the first thing you said to Chamber-
lain?

A. Well, I told him I was in bad circumstances,   *   *
and wanted to fix matters up.

7

Q. You told him you were in bad circumstances?

A. Yes, and that I owed Bowen $600.

Q. Tell him that you owed any other parties?

A. I told him I owed—well he knew I owed the bank —that is all.

Q. Tell him about anybody else?

A. No, sir.

Q. Didn't tell him a word about them; he didn't ask you how much you owed or to whom?

A. No, sir.

Q. Did he go on and make out a bill of sale without anything further being said?

A. No, sir; he asked me how—what the trouble was of course.

Q. What did you tell him?

A. I told him I had been sick  *  *  ·  and that I owed Mr. Bowen and that he wanted his money and I wanted to get some money.

Q. Did you ask him to loan you the money? Did you ask him the best way to fix it up?

A. I don't know as I did.

Q. Who made the first proposition about buying the stock of goods?

A. Just then I gave him a bill of sale of the goods.

Q. Who made the first proposition about buying the goods, you or he?

A. I suppose I did.

Q. What was the first terms you offered? What was your first proposition in regard to the sale of the stock?

A. I told him I owed Mr. Bowen $600, and he had some against me, and I was so I did not know whether I could work or not, and the stock would be worth $1,600.

The value of the stock, according to the witness for the defendant in error, was from $1,400 to $1,600. At the time of the transfer, it will be remembered, Hoppel was indebted to the bank $400, including the Penney note, which

it held by assignment, of which amount $200 was unsecured, and the reasonable inference is that the object of Chamberlain was to protect it as well as Bowen, who was a customer and stockholder.   It is not, however, seriously claimed that the contract is void for that reason alone. The question of fraud or good faith is one of fact, and was fairly submitted to the jury upon instructions, which it is admitted correctly state the law.   With the verdict upon the evidence ·we are not at liberty to interfere.   That a judgment or order will not be reversed for the reason that it is not in accordance with the preponderance of evidence, is a rule so often announced by this court as to render the citation of the cases wholly superfluous.   The district court did not err in overruling the motion of plaintiff in error for a new trial, and the judgment is

AFFIRMED.

THE other judges concur.