BLAIR STATE BANK, APPELLANT, V. V. BUNN ET AL.,
APPELLEES.

FILED MARCH 6, 1901. No. 9,403.

1. **Delivery of Deed: PRESUMPTION: PROOF OF MANUAL DELIVERY.** The presumption of law of the delivery of a deed of conveyance on the date of its execution is overcome by proof of a manual delivery and acceptance by the grantee at a subsequent date, where there is nothing warranting a conclusion that a delivery was intended by the grantor prior to the time of the manual delivery.

2. **Fraudulent Conveyance: PREFERRING CREDITOR: CONVEYANCE TO DEBTOR'S WIFE.** Where land was sold by a debtor to one of several creditors for an ample and fair consideration in satisfaction of *bona fide* pre-existing debts, and the purchaser afterwards contracted to reconvey the land to the wife of the grantor, *held* that the subsequent transaction was not evidence of a fraudulent conveyance in the first instance for the purpose of defrauding, hindering or delaying other creditors in the collection of their debts.

3. **Conveyance by Debtor to Relative.** A transfer of property by a debtor to a relative, which has the effect of hindering or delaying other creditors in the collection of their debts, will be scrutinized very closely; yet it will be sustained if made in good faith and for an adequate consideration. *Farrington v. Stone,* 35 Nebr., 457, followed.

4. **Debtor's Right to Satisfy or Secure Creditor.** A debtor has a right to satisfy or secure one or more of his creditors by the transfer of a reasonable amount of his property as security or payment of a *bona fide* debt; and the debtor has the right to make such preference of his creditors, even though the effect thereof be to defeat, hinder or delay other creditors in the collection of their debts; and this is so even though the parties knew that such would be the effect, and even though the property so taken as security was all the debtor had, if the value of the property so transferred is reasonably proportionate to the amount justly owing to the creditor so preferred, and was taken by the creditor for the sole and only purpose of protecting himself in the collection of his debt.

5. **Procedure to Dissolve Attachment.** Proceedings taken by a debtor to dissolve an attachment levied on his property, and after the dissolution thereof securing and preferring certain of his creditors to the exclusion of the attachment creditor, *held* not to constitute evidence of a fraudulent transfer of the debtor's property for the purpose of hindering or delaying his other creditors.

APPEAL from the district court for Washington county. Heard below before DICKINSON, J.  *Affirmed.*

*Osborn & Aye,* for appellant.

*D. W. Merrow, C. C. Wright, H. E. Burnam* and *Walton & Mummert, contra.*

HOLCOMB, J.

In an action at law the appellant, in January, 1894, obtained a judgment for over $7,000 against the appellee, V. Bunn, upon which there was realized and credited the sum of about $2,000.   Thereafter, and in February, 1895, an action in equity was begun by the appellant in the nature of a creditor's bill, for the purpose of having declared fraudulent and void, as to it, certain transfers of property, both real and personal, made by the judgment debtor, V. Bunn, and to subject such property to the payment of said judgment.   After trial, in which all necessary parties were brought, issues joined, and the submission of a great deal of evidence, the trial court found on the issues in favor of the appellees, and a judgment was rendered in their favor,·from which the appellant appeals to this court.

The more important features of the case, in which are included the essential elements of the controversy, as disclosed by the record, appear to be as follows: The said Bunn, being the owner of considerable property and engaged in farming on an extensive scale, was, at the time of bringing the law action first mentioned, indebted to divers persons in various sums of money, including the plaintiff in that action who was the heaviest of his creditors.   In the law action the appellant caused to be issued a writ of attachment on the ground of alleged fraud on the part of the defendant as to the disposition of his property, which was levied on the property of the defendant in that action, now the judgment debtor.   A motion to dissolve the attachment, supported by affi-

34

davits, was interposed by the defendant, which upon hearing was sustained and the attachment dissolved, from which order of dissolution no appeal or other proceeding was taken, and the same thereupon became final. Immediately after the dissolution of the attachment the defendant executed several conveyances, by which his other creditors were secured, and in which conveyances was included all his property, both real and personal, save a certain quarter section of land, which, after judgment in the law action, was levied upon and sold to satisfy such judgment. The present proceedings were thereafter instituted in an attempt to reach the property conveyed to the other creditors as aforesaid.

The evidence in the equity action is without serious or substantial conflict or contradiction, and the only important question arising thereon is as to the proper deductions to be made therefrom. It is practically conceded that the transfers complained of were made to secure and satisfy *bona fide* debts owing by the grantor, but it is insisted that such transfers were made for the purpose also of defrauding, delaying or hindering the appellant in the collection of its debt, in which fraudulent and unlawful purpose the grantees participated, thereby rendering such conveyances fraudulent and invalid as to the appellant under the provisions of section 17, chapter 32, Compiled Statutes, entitled "Frauds." The section just referred to provides that conveyances of the kind under consideration, made with intent to hinder, delay or defraud creditors, or persons of their lawful rights, debts or demands, shall be void as against the person so hindered, delayed or defrauded. It is earnestly insisted that in the present case, under the evidence, it is shown that the preferred creditors were not acting in good faith for the sole purpose of securing their past debts, but were engaged in a preconcerted effort, in conjunction with the judgment debtor, to so cover up all his property as to keep it under his and the preferred creditors' control, and prevent appellant from collecting its

judgment, all in fraud of its rights as a judgment creditor. We are unable to make extended reference to the evidence in the case, and content ourselves by saying that in the examination which we have been enabled to make we find no violation of the provisions of the statute referred to, nor of any rule of law giving to a debtor, under certain circumstances, when done in good faith, the right to secure some of his creditors to the exclusion of others, even though the inevitable effect of the preference is to delay or hinder other creditors of the same debtor in the collection of their just demands. It is fairly well established by the evidence that the several transfers and conveyances of which complaint is made were to secure or satisfy actual and *bona fide* pre-existing debts, and that the security taken, or the property transferred, was not so disproportionate in value as to raise any presumption of fraud by reason of such transfer.

The right of a debtor to prefer certain creditors to the exclusion of others, if done in good faith, being admitted, it is required of us only to examine into the case with a view of ascertaining whether, in the transactions entered into in making such preference, there has been any violation of law which would invalidate the contract or agreement by which the same was accomplished. It appears that all the chattel property of the debtor was mortgaged to secure debts then existing, and that such mortgages were, in the manner provided by law, foreclosed, and the property sold to satisfy the debts for which the mortgages were given. Certain real estate was sold and transferred in payment of other debts then owing by the grantor. It thus appears that all of the property of the debtor, which is sought by these proceedings to be reached and applied to the satisfaction of appellant's judgment, has actually been sold and transferred from the debtor in the payment of just obligations owing by him.

A deed of conveyance was made by the debtor to one of his creditors, in which certain other debts secured by

mortgage on the same land were assumed by the grantee. It is insisted that because the deed was signed by the grantor alone, and acknowledged a day prior to the day the mortgages were executed, that delivery must be presumed to have been made on the day of its date, and that the mortgages of the subsequent date conveyed no title, and were, therefore, void. A fair construction of the different transactions leads us to the conclusion that the deed was not delivered until after the execution of the mortgages securing the debts assumed by the grantee, and that the deed, when delivered, was subject to such mortgages. This was the grantee's view of the transaction, and the debts which the mortgages secured were specifically assumed by him as a part of the consideration. The land was a homestead. The wife of the grantor did not sign the deed until the day subsequent to its date, and on the same day the mortgages were executed securing other debts assumed by the grantee. The grantee testifies in effect, that the deed was not delivered until so acknowledged, when he had it filed and recorded. There is nothing warranting the conclusion that a delivery was intended by the grantor until the time of manual delivery to the grantee and acceptance by him. The presumption that the deed was delivered on the date of its execution is thus overcome, and there is nothing from which the fact may be inferred that a delivery was intended before it was actually received by the grantee. The grantee paid a full and fair consideration for the land, obtained satisfaction of a *bona fide* debt thereby, and there is nothing deducible from the evidence which impeaches the good faith of the transaction. While it is argued that a subsequent contract for the resale of the homestead to the wife, by the grantor and creditor, is evidence of a want of good faith in the original transaction, we view it only as a laudable effort to preserve the homestead to the use of the family, while at the same time devoting all property which might lawfully be exacted to the payment of the debts of the homestead

owner. It is entirely clear that the property had been honestly transferred to one having a lawful right to claim the same in satisfaction of a debt, and if he thereafter contracts to resell to the wife of the debtor, such transaction can in no manner impair the rights of other creditors, but rather assists them in making it more probable that the debtor will satisfy all debts in full.

Some of the transfers were made to relatives of the debtor, and it is argued that the evidence does not show that the debts thus secured or satisfied were *bona fide* and the transfers made in good faith. From the evidence we think it fairly inferable that the debts, to secure and satisfy which the transfers were made, were actual, subsisting and just obligations, existing against the debtor, and it is not disclosed by the evidence that in the transactions by which the debts were secured or satisfied there was a want of good faith, or that the creditors were actuated by other motives or acted for other purposes than the securing of just demands owing them by the grantor. One was a son and the other a sister of the debtor. In *Davis v. Schwartz*, 155 U. S., 631, 638, it is said by Mr. Justice Brown in the opinion: "The fact that the assignee or the preferred creditor of an insolvent debtor is a relative or intimate friend is doubtless calculated to excite suspicion; yet in reality there is nothing unnatural in a dealer or trader who is in need of credit, or a loan of money to carry on his business, first applying to his relatives for such loans, and if the evidence be undisputed that the money was advanced, the fact that the persons making the loan are relatives ought not to debar them from receiving security. Their rights are neither increased nor diminished by the fact of relationship. *Magniac v. Thomson*, 7 Pet. [U. S.], 348; *Prewit v. Wilson*, 103 U. S. 22; *Estes v. Gunter*, 122 U. S. 450; *Bean v. Patterson*, 122 U. S. 496; *Garner v. Second Nat. Bank*, 151 U. S. 420, 432; *Aulman v. Aulman*, 71 Iowa, 124; *Van Patten v. Thompson*, 34 N. W. Rep. (Ia.), 763; *In re Alexander*, 37 Iowa, 454; *Doyle v. McGuire*, 38 Iowa, 410." In *Farrington*

*v. Stone,* 35 Nebr.,456,it is stated in the third paragraph of the syllabus that "while a transfer of property to a relative by a person liable on a claim, where the effect will be to defeat the payment of the same, will be scrutinized very closely, yet it will be sustained, if made in good faith for an adequate consideration;" and the opinion by MAXWELL, C. J., sustains the proposition thus announced. Says HARRISON, J., in *Steinkraus v. Korth,* 44 Nebr., 777, 782: "The rule in this state as to such transactions has been established as follows: Where property is conveyed from one relative to another as a payment of an alleged past due indebtedness, and thereby creditors of the party making the conveyance are deprived of their just dues and claims, the transaction will be scrutinized or examined very closely, and its *bona fides* must be clearly established," citing a number of cases decided by this court. Whether or not, in the present case, the conveyances to the relatives of the grantor were made in good faith and for the sole purpose of protecting a *bona fide* debt is a question of fact to be determined from all the evidence in the case. Applying the rule spoken of with reference to transfers of the kind now under consideration, we are of the opinion that the conclusion of the trial court, as evidenced by its general finding in favor of the appellees, is correct and justified by the facts and circumstances surrounding the transactions and connected therewith. As to the right of a debtor to secure and prefer one of his creditors to the exclusion of others, it is said in an instruction quoted and approved by this court in *Jones v. Loree,* 37 Nebr., 816, 821: "A creditor has a right to take a chattel mortgage on a reasonable amount of his debtor's personal property as security for his *bona fide* pre-existing debt, and the debtor has a right to make such preference of his creditors, even though the effect thereof be to defeat, hinder, or delay other creditors in the collection of their debts; and this is so even if the parties knew that such would be the effect, and even though the property so taken as security was all the

debtor had, but in value reasonably proportionate to the amount justly owing to the creditors so preferred." Says IRVINE, C., writing the opinion: "To say that knowledge upon the part of an existing creditor of the debtor's intention to defraud creditors would render any security demanded by such creditor fraudulent would be equivalent to saying that the creditor is estopped from protecting himself by knowledge of the very facts which warrant him in seeking protection. A fraudulent intent may be very properly imputed to a stranger who knowingly assists the debtor in defeating his creditors by a purchase of the debtor's property, but no such intent can be imputed to an existing creditor because of his knowledge of such intent, when for the sole purpose of protecting himself he receives sufficient and reasonable security for that purpose." To the same effect are the following: *Bamberger v. Schoolfield*, 160 U. S., 149; *Rock Island Plow Co. v. Hill*, 32 S. W. Rep. [Tex.], 242.

It is urged that the steps taken by the debtor to dissolve the attachment levied at the instance ·of appellant in the action at law, supported, as was the case, by affidavits of other creditors afterwards given a preference by securing their debts, sustains the contention that the subsequent acts of the debtor with reference to the disposition of his property to secure other creditors is evidence warranting the conclusion that the transfers so made are fraudulent and void as to appellant. In all these proceedings he was doing only that which is permitted by law. If no cause existed for suing out the writ of attachment, as we must assume from the order of the trial court,—and it is lawful to secure one debt to the exclusion of another, if done in good faith, as seems to be in the present instance,—then each and all of the acts performed by the debtor are consistent with each othe" and in harmony with law. In the attachment proceedings the creditors of the defendant, whose debts were afterwards secured and satisfied, could exercise no control, and were in nowise responsible for the action taken.

Again, it must be assumed that the defendant was in the right in those proceedings, and if so, wrong can not be predicated thereon. The weakness in the position of appellant is its contention that because other just debts of the debtor were secured and satisfied, and thereby it was prevented from collecting its debts, the evidence warrants the inference that the transactions by which these results were accomplished were for the purpose and with the intent of delaying or hindering it in the collection of its debts. It proceeded by suit and attachment to collect its debts. This proved abortive. The other creditors, by the action taken by appellant, would naturally become concerned about their own debts, and were justified in resorting to all lawful methods to secure or satisfy the same. It became a struggle among several creditors to have satisfaction of their demands, and it is not strange under the circumstances that the debtor felt more disposed to secure those whom he did, or that some of the creditors were more successful than appellant in obtaining the desired security or payment. It can not, we think, be said that there was on the part of the different creditors any purpose or intent shown, except to obtain security or satisfaction of their demands, and that in doing so they acted within the limits prescribed by law, and obtained only such property as was reasonably sufficient at a fair valuation to answer the purpose for which it was transferred. Bad faith, or an intent to hinder or delay the appellant in the collection of its debts, on the part of the other creditors, or either of them, is not, we think, shown by the evidence. It is not necessary for us to discuss the evident purposes or intent of the debtor. It may be conceded that his object, intent and purposes were those condemned by the statute, but it does not appear that the other creditors shared or participated in such wrongful intent or purposes, or assisted him in carrying them into execution any further than was the necessary and inevitable result in securing to themselves that which was justly due them and which they might

lawfully do.   The conclusion of the trial court must be regarded as being right and justified by the evidence. There was no restraint on the debtor to make such lawful disposition of his property as he might desire.   Those who were vigilant and active in securing the debts owing to them are not at all blamable for obtaining satisfaction or security, if done honestly and for that purpose alone, even though such acts had the effect of depriving the attaching creditor of full satisfaction of its judgment afterwards obtained.  The whole transaction involves, primarily, questions of fact.   The trial court heard all the witnesses, was acquainted with all the circumstances, and was in an advantageous position to make just and proper deductions from the evidence in the case, and the conclusion reached we hold to be justified by the record.

For the reasons given the judgment should be affirmed, which is accordingly done.

AFFIRMED.