GAGE BROTHERS & COMPANY, APPELLEE, v. MALINDA J.
BURNS ET AL., APPELLANTS.

FILED APRIL 18, 1907. No. 14,758.

1. Fraudulent Conveyances: EVIDENCE. The court will carefully scru-
tinize a transfer of property between near relatives, which has
the ultimate effect of hindering and delaying the creditors of
the grantor; but, if, on an examination of the evidence concern-
ing the transfer, it appears that the grantee purchased the prop-
erty and paid full value therefor in good faith, and without any
intent to aid the grantor in cheating and defrauding his cred-
itors, it will be upheld.

2. ———: ———. Mere suspicions of fraud will not prevail against
positive and unimpeached testimony showing the good faith of
the transfer.

APPEAL from the district court for Lancaster county:
LINCOLN FROST, JUDGE. Reversed with directions.

J. E. Philpott, for appellants.

Wilson & Brown, contra.

OLDHAM, C.

This was an action in the nature of a creditor's bill for
the purpose of setting aside a conveyance of certain town
lots situated in the city of Lincoln, Nebraska, made by the
defendant Malinda J. Burns to the defendant William A.
Watson, on the ground that such conveyance was made for
the purpose of hindering, delaying and defrauding the
creditors of defendant, Mrs. Burns. There was a trial of
the issues to the court, and judgment for the plaintiff. To
reverse this judgment the defendants have appealed to this
court.

The facts underlying this controversy are that at and
prior to the year 1900 the defendant Malinda J. Burns was
the owner of the lots in controversy; that Mrs. Burns was
an aged lady who resided with and was supported by her

50

daughter, Mrs. Sadie Puckett, who was engaged in the millinery business in the city of Lincoln; that in the year 1900 a judgment was procured by the plaintiff in this action against Mrs. Puckett in the county court of Lancaster county; that this judgment was appealed from, and Mrs. Burns signed the appeal bond as surety for her daughter. After the appeal was taken to the district court, judgment was rendered in that court in favor of the appellee in the year 1904, and in the same year a judgment was procured against the defendant, Mrs. Burns, as surety on the appeal bond. In 1902, and while the appeal was pending in the district court, Mrs. Burns sold and conveyed the premises in controversy to the defendant William A. Watson by a deed of warranty for the express consideration of $1,500 in cash. After the judgment was procured against Mrs. Burns in the district court for Lancaster county in the year 1904, and an execution had been issued and returned *nulla bona,* the instant suit was instituted for the purpose of subjecting the lots conveyed to Watson to the lien of plaintiff's judgment.

As the case is here for a trial *de novo,* we will supplement out judgment and findings by a brief review of the evidence offered in the court below. But four witnesses testified. One of these, defendant William A. Watson, said that he was the nephew of the defendant, Mrs. Malinda J. Burns; that he resided in the city of Omaha, Nebraska, and was engaged in the business of horseshoeing; that he came to Lincoln once or twice a year, generally on political errands; and that when in Lincoln he ordinarily visited his aunt and his cousin, Mrs. Puckett; that he called on his aunt, Mrs. Burns, a short time before the purchase of the property in dispute, and she told him that she was in need of money to live on, and wanted to sell her lots; that he suggested borrowing money on the lots, but she objected, because she had no means to pay the mortgage, and wanted him to purchase them from her; that he inquired of attorney Cochran as to the title

of the lots and their probable value, and, finding that the title was clear, he agreed to take them; that he went to Omaha, and took some money that he had from his business and borrowed $1,150 more from a friend of his, Thomas Dennison, and returned to Lincoln, and paid the money in cash to Mrs. Burns in the presence of her daughter, Mrs. Puckett, and received the deed and placed it on record, and had since that time paid the taxes on the real estate in dispute. He denied positively that he had any information that Mrs. Burns was surety on the appeal bond of Mrs. Puckett at the time of the transfer, or that he knew that she was indebted to anyone for anything at that time.

Defendant, Mrs. Burns, testified and admitted that she signed the appeal bond for her daughter, but says that she did not know that she was indebted to anyone when she made the transfer. She further testified that she was about 73 years old at the time of the trial; that she lived with her daughter, Mrs. Puckett, and had been in poor health for several years, and relied upon her daughter for support; that her daughter had been engaged in the millinery business until her business had been closed by a bankruptcy proceeding; and that she sold the lots to defendant Watson for the purpose of getting money for her support and the support of her daughter. She testified that Watson paid her 1,500 in cash for the property at the time the deed was delivered, and that she did not tell Watson that she was on the appeal bond of her daughter. Mrs. Puckett testified that she learned of the purchase of the property by Mr. Watson at the time that it was agreed upon, and that she was present when the deed was delivered, and that she counted the money and took it into her possession and kept it for the support of herself and her mother after the transfer was made. Thomas Dennison testified that he loaned Watson $1,150 just before the purchase of the property, that he made a memorandum of the loan on a little memorandum book which he carried at that time, and that Watson returned

the loan from time to time in sums ranging from $50 to $200, until it was finally all paid.

This was all the testimony offered at the trial of the cause in the court below. No witness was impeached either by contradictory statement or by affirmative evidence tending to show his want of credibility. Appellee relies on the fact that the transfer, having been between near relatives, was presumptively fraudulent as against creditors, and that the testimony offered in support of the transfer is so improbable on its face as to warrant the court in absolutely ignoring and disbelieving it. With reference to the first proposition, we would say that it is true that the court will carefully scrutinize a transfer of property between near relatives, which has the ultimate effect of hindering and delaying the creditors of the grantor in the conveyance, but yet, if, on an examination of all the evidence in the record, it appears to have been taken by the grantee for a valuable consideration and without participating in any intent of the grantor to cheat or defraud creditors, it will be upheld. *Blair State Bank v. Bunn,* 61 Neb. 464; *Farrington v. Stone,* 35 Neb. 457.

Now, it is plain from an examination of the testimony that there is no evidence in any manner tending to show that defendant Watson knew of Mrs. Burns' contingent liability on the appeal bond of Mrs. Puckett at the time of the purchase of the lots, so that, if the transfer be set aside, it must be on our disbelief of the testimony of the witnesses, who swear that he paid $1,500, which is conceded to have been a fair consideration for the lots in controversy. It is urged by the appellee that we should discredit the testimony, because it is improbable that Watson borrowed $1,150 from Thomas Dennison without giving a note or any security for the loan. Against this suggested doubt, however, is the positive testimony of Dennison himself that he did make this loan, made it without security, made it without asking or desiring interest, made it as a favor to a friend who shod his blooded horses, and at whose place of business he called almost every day to

see other horses that were shod there. In the face of positive and unimpeached testimony showing the good faith of the transfer, mere suspicions of fraud will not prevail. This court has said, in *Bank of Commerce v. Schlotfeldt,* 40 Neb. 212; "Fraud is never to be presumed. It must be proved. A creditor of a vendor seeking to invalidate a sale upon the grounds of fraud must prove facts from which a legitimate inference of fraudulent intent can be drawn. Evidence simply justifying a suspicion is not sufficient."

We therefore conclude that the uncontradicted testimony in the record is sufficient to sustain the *bona fides* of the transfer of the lots in controversy, and that the judgment of the district court should be reversed and the cause remanded, with directions to the court below to dismiss the plaintiff's bill and to render judgment in favor of the defendants, and this we accordingly recommend.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, with directions to the court below to render judgment in favor of the defendants, dismissing plaintiff's bill.

REVERSED.