BANK OF PLYMOUTH, APPELLANT, V. WILLIAM O. RITCHEY ET AL., APPELLEES: ERNEST H. KOUBA ET AL., APPELLANTS.

FILED APRIL 12, 1927.   No. 24732.

1. **Fraudulent Conveyances:** PREFERENCE. "A debtor has a right to satisfy or secure one or more of his creditors by the transfer· of a reasonable amount of his property as security or payment:

of a *bona fide* debt; and the debtor has the right to make such preference of his creditors, even though the effect thereof be to defeat, hinder or delay other creditors in the collection of their debts; and this is so, even though the parties knew that such would be the effect, and even though the property so taken as security was all the debtor had, if the value of the property so transferred is reasonably proportionate to the amount justly owing to the creditor so preferred, and was taken by the creditor for the sole and only purpose of protecting himself in the collection of his debt." *Blair State Bank v. Bunn*, 61 Neb. 464.

2. ——: DEED AS MORTGAGE. A conveyance of land by a debtor to secure a debt, though absolute on its face, and accompanied by a secret understanding that the deed is to operate as a mortgage, is not fraudulent as to the other creditors as a matter of law, but is only a circumstance to be taken into consideration with all other circumstances of the transaction, and the question of whether or not the conveyance is fraudulent is always a question of fact to be determined from all the circumstances entering into and surrounding the transaction.

3. ——: CHATTEL MORTGAGES: STIPULATION AS TO SURPLUS. It is a general rule that stipulations in a mortgage of realty or personalty or in an instrument in the nature of a mortgage given by a failing debtor, reserving to the grantor the surplus proceeds or the unsold property remaining after the payment of the debt or debts secured, is but the expression of what the law would imply without a reservation, and does not vitiate the instrument.

4. Specific Performance. Ordinarily, a vendor in a contract for conveyance of lands must either substantially perform or tender substantial performance of a contract before he is entitled to maintain an action for specific performance or an action of foreclosure on the contract for a breach thereof by the vendee. He cannot, in a court of equity, in the absence of waiver or estoppel, secure relief under the provisions of a contract which he has breached to such an extent that the contract he seeks to enforce is substantially other and different from the contract which was made by the parties.

5. Vendor and Purchaser: RESCISSION. Evidence examined, and *held* that the defendants Beaver and the bank have substantially breached the contract of sale entered into by Kouba and Kastanek to such an extent that by reason thereof the defendants last named are entitled, in the absence of waiver or estoppel, to

rescission thereof and to recover from the defendants the
amount paid upon the contract.

6. **Fraudulent Conveyances.** Evidence examined, and *held* to sup-
port the decree of the district court in favor of Beaver and
the City National Bank as to that portion of the court's decree
denying relief to plaintiff herein, and establishing the right of
subrogation in defendants named.

7. ————. Evidence further examined, and *held* to entitle the
defendants Beaver and the Bank to a decree establishing their
right to ownership of the promissory notes described in the
record as against O. C. Larson.

APPEAL from the district court for Lancaster county:
JEFFERSON H. BROADY, JUDGE. *Affirmed in part, and re-
versed in part.*

*Craven & Bickford, C. J. Campbell, Clarence G. Miles* and
*John J. Ledwith,* for appellants.

*Hainer, Flansburg & Lee, W. L. Kirkpatrick* and *R̄. H̄.
Hagelin, contra.*

Heard before GOSS, C. J., DEAN, DAY, GOOD, THOMPSON·
and EBERLY, JJ.

EBERLY, J.

This action was instituted by the Bank of Plymouth
against the defendants to annul a conveyance to Commodore
N. Beaver of certain real property, alleged to be fraudulent,
and to subject property conveyed to the lien of plaintiff's
judgment. As an alternative relief, plaintiff's petition con-
tained a prayer for impounding the purchase price of the
lands in suit derived from a sale thereof subsequently made
to Ernest H. Kouba and Frank Kastanek.

The Federal Trust Company of Lincoln, Nebraska, a cor-
poration, by answer and cross-petition, seeks to foreclose
the first mortgage on the premises in litigation. The plead-
ings disclosed conflicting claims by O. C. Larson and in be-
half of the City National Bank of York to promissory notes
for $2,712 evidencing a portion of the purchase price of
the sale made to Ernest H. Kouba and Frank Kastanek.

The two purchasers, Kouba and Kastanek, by cross-petition, seek to rescind the sale made to them and to secure the return of the money paid, as well as the cancelation of the promissory notes given as the consideration of the purchase of the real estate made by them from Commodore N. Beaver. The district court denied the plaintiff relief, and sustained the conveyance of the real estate to Commodore N. Beaver, and also sustained the contract of sale to Kouba and Kastanek, and a decree of foreclosure and sale was entered in favor of the Federal Trust Company, but giving the City National Bank and Commodore N. Beaver 40 days from date of decree to redeem by payment of the amount due thereon, and by such redemption were to be subrogated to certain rights enumerated in the decree. The court determined O. C. Larson to be the owner of the $2,712 notes in suit. The Bank of Plymouth, the Federal Trust Company, Ernest H. Kouba, and Frank Kastanek appeal.

The following embraces the principal facts out of which the controversy arises: In 1921, William O. Ritchey, through a trade and at a trade value of $30,000, became the owner of a 30-acre dairy farm near Bethany Heights, Lancaster county, Nebraska. At this time he was indebted to the City National Bank of York in the sum of $14,960 on promissory notes executed by him as principal, and to the extent of $6,500 as indorser and surety. He was also indebted to the City Trust Company of York, Nebraska, in the sum of $7,000 evidenced by his promissory note. The City National Bank and the City Trust Company are affiliated institutions, Commodore N. Beaver being the president of both. To secure this indebtedness, on November 10, 1921, William O. Ritchey and wife executed an instrument, in form a warranty deed, reciting a consideration of $30,000 and purporting to convey the 30-acre dairy farm to Commodore N. Beaver. The instrument recites that the premises conveyed are "free from incumbrance except one certain mortgage in the sum of $8,000," and that the grantors further covenant to "warrant and defend the same unto

the said C. N. Beaver and unto his heirs and assigns for-
ever, against the lawful claims of all persons whomsoever."
On April 19, 1923, an agreement of sale was entered into
between William O. Ritchey, party of the first part, and
Ernest H. Kouba and wife, Ana, Frank Kastanek and wife,
Emma, parties of the second part, by the terms of which
the dairy farm was sold to the parties of the second part
in consideration of the sum of $19,000—$1,000 being in
cash, $7,500 to be a mortgage placed upon the dairy farm,
and $10,500 to be represented by a series of promissory
notes executed by the purchasers. By the terms of this
contract of sale it was agreed that "due conveyance of said
premises" shall be made "by warranty deed executed and
deposited in the City National Bank of York with a dupli-
cate original of this contract within thirty days hereafter,
conveying said lands to such persons as the second parties
shall name, the said warranty deed to be supplemented by
the good and sufficient quitclaim deed of the first party and
his wife." This transaction was approved and ratified by
Commodore N. Beaver and the City National Bank and the
City Trust Company. The cash payment of $1,000 and the
$10,500 in notes were accepted by the bank at par value and
both credited on the indebtedness of Ritchey at par.

As part of the transaction, included in the sale of the
dairy farm, it seems that William O. Ritchey had fraudu-
lently carried out a side deal, unknown to Beaver and the
bank and the City Trust Company, result of which was ulti-
mately to secure the $2,712 in promissory notes executed by
the purchasers and payable to O. C. Larson in addition to
the consideration of $19,000 set forth in the contract of
sale. These notes constitute the subject of the action as
between the City National Bank and O. C. Larson.

In September, 1921, and prior thereto, William O. Ritchey
was largely indebted to the plaintiff Bank of Plymouth.
After the conveyance of the dairy farm by Ritchey to Bea-
ver, a suit was instituted by the Bank of Plymouth against
William O. Ritchey which, on December 28, 1922, ripened

into a judgment in favor of the bank for $15,102.27. On March 9, 1923, the defendant Ritchey paid the Bank of Plymouth on this judgment the sum of $5,943.70. Thereupon, after issuance and return of execution wholly unsatisfied, this action, in the nature of a creditor's bill, was commenced by the plaintiff to set aside the conveyance to Commodore N. Beaver and subject the dairy farm to the lien of plaintiff's judgment. According to plaintiff's witnesses the gross value of the dairy farm at the time of its conveyance to Beaver did not exceed $30,000. Evidence in the record establishes beyond controversy that at the date of the transfer attacked, September, 1921, the first mortgage lien, accruing interest thereon, taxes, and assessments against the farm were in excess of $10,000. This would leave as its highest possible net value $20,000. There is no evidence in the record that impeaches the claim that, at the time of the transfer of the land to Commodore N. Beaver, Ritchey was justly indebted to the City National Bank in the sum of $14,960 and interest upon promissory notes of which he was the maker, and in a like manner was indebted to the City Trust Company in the sum of $7,000, and that he was, in addition thereto, indebted to the City National Bank in the sum of $6,500 as indorser and surety upon other obligations. The highest net valuation of the property in suit being $20,000, the just claims of secured creditors being $21,960, or $28,460, had a mortgage in usual form been taken by these creditors, or by Commodore N. Beaver in their behalf, its validity would have been beyond challenge.

"A debtor has a right to satisfy or secure one or more of his creditors by the transfer of a reasonable amount of his property as security or payment of a *bona fide* debt; and the debtor has the right to make such preference of his creditors, even though the effect thereof be to defeat, hinder or delay other creditors in the collection of their debts; and this is so, even though the parties knew that such would be the effect, and even though the property so taken as security was all the debtor had, if the value of

the property so transferred is reasonably proportionate to the amount justly owing to the creditor so preferred, and was taken by the creditor for the sole and only purpose of protecting himself in the collection of his debt." *Blair State Bank v. Bunn,* 61 Neb. 464. See, also, *Costello v. Chamberlain,* 36 Neb. 45; *Davis v. Scott,* 27 Neb. 642; *Britton v. Boyer,* 27 Neb. 522.

Neither do we overlook the fact that the record discloses that Ritchey secured $570 of the rental of the dairy farm for 1922, and also disposed of $2,712 of the purchase price of the same in 1923. It may be conceded that, if this was fraudulently connived at, or knowingly permitted by the mortgagee or grantee, it would operate to invalidate the transaction. The facts of the situation, fairly reflected by the record, however, disclose that Beaver, the trustee, the City National Bank, and the City Trust Company, had no knowledge of the "side transaction" at or prior to the time of its occurrence, and were, in fact, the victims of a fraud of Ritchey, and not participators therein.

It would necessarily follow that the validity of the transactions between Ritchey and Beaver and the bank and trust company cannot be affected by the incidents above referred to. There being no "fraud" in fact in the transaction, the next question presented is: Does legal fraud appear in the "form of the transaction?"

The form made use of by the parties was a warranty deed without any defeasance clause in writing. The consideration named therein is $30,000, and full covenants of warranty, with exceptions as to mortgage of $8,000, as heretofore stated in this opinion, and $22 revenue stamps were placed on the instrument.

A fair inference is that the purchaser does not pay the vendor the full value of the mortgaged property, but that the amount of the mortgage is reserved in his hands as so much money for the purpose of discharging the lien. In the instant case, that inference would be strengthened by the fact that, though the mortgage of $8,000 is excepted

from the covenants against incumbrances, no similar exception is made as to the general covenant of warranty, and but $22 in United States revenue stamps were affixed to the instrument. In fact, by its face, this instrument in controversy fairly proclaims to the world that it is based on a net consideration of $22,000.

A mortgage properly drawn properly recites as its consideration the amount of the indebtedness secured thereby. In respect to consideration recited in this instrument before us, $22,000 is, to say the least, not in any manner or to any degree excessive. In view of the fact that the City National Bank, after all securities possessed by it had been liquidated, still possesses the obligations of Ritchey in excess of $10,000 unpaid, how can it be said that the amount of the security taken was excessive?

Neither do we find that, under the facts in this case, the form of the instrument being that of a warranty deed which was recorded as such invalidates the security. "Fraudulent intent * * * shall be deemed a question of fact, and not of law." Section 2557, Comp. St. 1922.

A conveyance of land by a debtor to secure a debt, though absolute on its face, and accompanied by a secret understanding that the deed is to operate as a mortgage, is not fraudulent as to other creditors as a matter of law, but is only a circumstance to be taken into consideration with all other circumstances of the transaction, and the question of whether or not the conveyance is fraudulent is always a question of fact to be determined from all the circumstances entering into and surrounding the transaction. *Kemp v. Small*, 32 Neb. 318; *Merillat v. Hensey*, 221 U. S. 333; 27 C. J. 608, sec. 356.

"It is a general rule that stipulations in a mortgage of realty or personalty or in an instrument in the nature of a mortgage given by a failing debtor reserving to the grantor the surplus proceeds or the unsold property remaining after the payment of the debt or debts secured is but the expression of what the law would imply without a reserva-

tion, and does not vitiate the instrument." 27 C. J. 604, sec. 349.

Fairly construed, there can be no dispute, in view of the evidence of the record that it was the intent and purpose of the parties to the conveyance attacked that, to the extent of their indebtedness secured thereby, all proceeds of that property should be applied thereto before anything should be considered for the benefit of, or be subject to, the order of Ritchey. The rights of the City National Bank and the City Trust Company were, in all respects, senior and superior, and their claims were to be satisfied before Ritchey was entitled to any part of the surplus remaining.

We, therefore, find that the district court did not err in denying relief to the plaintiff.

The Federal Trust Company presents two questions by its appeal. The first is a claim that the provisions of the decree of foreclosure, extending the time of redemption of the mortgaged premises to 40 days, is wholly unauthorized in law. Conceding, as a matter of argument, this to be well-founded, the 40 days allowed for this purpose have expired, and at this time the error, if error there was, cannot affect the substantial rights of the parties to the suit.

The next contention of the Federal Trust Company is based upon that portion of the final decree providing for subrogation in favor of Beaver or the City National Bank, and also providing for the assignment of the Federal Trust Company promissory notes thereby secured to Beaver and the City National Bank. It is claimed that these provisions last mentioned are neither supported by pleading nor sustained by evidence. This contention we cannot accept. Competent evidence to sustain this portion of the decree is to be found in the record, and an examination of the pleadings discloses that facts ample to justify this action of the district court appear in the pleadings of the parties. There is, however, no express prayer for that relief unless the general prayer contained in the answer and cross-petition of Beaver and the bank requesting "such other and dif-

ferent relief as may be just and equitable" is sufficient. Under the circumstances of the present case, we deem the prayer sufficient. At least, if error was committed, it would be error without prejudice. Section 8657, Comp. St. 1922. We are satisfied that these defendants, in view of the evidence, are entitled as awarded thereon.

It is also patent that under the terms of this decree there can be no effective subrogation in fact until the Federal Trust Company receives the complete payment of the amount adjudged to be due it. It follows that it is in no manner injured by the provisions of which it complains. *Kemp v. Small, supra;* ·37 Cyc. 443.

We will next take up the issues presented and growing out of a contract of sale made between Ernest H. Kouba and Kastanek, on one hand, and Ritchey, on the other, which contract, as to $19,000, was approved and ratified by Beaver and the City National Bank and the City Trust Company. The first question to be disposed of arises between the City National Bank and O. C. Larson as to the right to $2,712 in notes executed by Kouba and Kastanek now in the possession of the bank. The evidence in the record is without a dispute and sustains the conclusion that these notes represent a part of the actual consideration of the sale and which, by a secret deal between Larson, Ritchey, Kouba, and Kastanek, were concealed, and that knowledge thereof was kept from the bank and the bank's trustee. While the notes in question were not referred to in the contract of sale, they unquestionably constituted a part thereof, and they were, as part of the consideration, property to which the bank and its trustee were entitled by virtue of the deeds executed by Ritchey to Beaver as trustee. It would seem that but one conclusion can be supported by the evidence in the record, and that is, as between the City National Bank and O. C. Larson, the bank is the owner of said notes, entitled to maintain possession thereof, and enforce payment in accordance with their terms in its own name. This finding and judgment is, however, without prejudice to the rights

of Kouba and Kastanek as they may be hereafter determined.

The rights of Kouba and Kastanek in this case must be determined and governed by the terms of the contract of sale. This contract, in part, provided that Kouba and Kastanek should pay for the dairy farm "the sum of $19,000, which sum the second parties jointly and severally agree to pay as follows, to wit, $1,000 in cash; $7,500 by a mortgage to be placed upon said real estate as of this date with the interest on said mortgage hereafter at the rate of 7 per cent. per annum, which mortgage and interest the second parties assume and agree to pay, and the balance in the sum of $10,500 to be evidenced by the forty-two (42) several notes of the second parties, dated this date, bearing interest at the rate of 7 per cent. per annum, payable semiannually; the first of said notes to become due October 1, 1923, and the rest of them to be a series of which one note shall come due upon the first day of each month after the last said date; but with the option of the makers to pay said notes, or any or all of them at any time, provided, however, that none of them shall be taken up out of its order in said series."

It was claimed at the trial in the court below that the two mortgages dated May 1, 1923, and placed upon the dairy farm by Commodore N. Beaver, were in substantial compliance with the provisions of the sale contract above quoted; that, in fact, the $7,500 mortgage bearing interest at 6 per cent. payable semi-annually, and the $335 second mortgage evidenced the equivalent of but an additional 1 per cent. payable semi-annually, together, merely amounted to a $7,500 mortgage bearing 7 per cent. interest. But it must be admitted that the contract of sale provisions contemplated a mortgage of $7,500 bearing 7 per cent. per annum payable annually, and conceding the claim of the City National Bank and the trustee, Beaver, the two mortgages before us would bear interest at 7 per cent. payable semi-annually. In addition to this, it is to be noted that

the sale contract contains no stipulations as to the $7,500 mortgage assumed containing any terms providing the acceleration of the due date of the entire amount secured or the increase of interest rate in the event of the nonpayment of interest accruing thereon, or the nonpayment of any part of the principal, or of any taxes assessed on the premises, or of any insurance to be furnished by the mortgagors at their own expense to the mortgagee. The incorporation of these provisions in the mortgages placed upon the premises, assuming them to be otherwise in substantial compliance with the contract of sale, was a substantial violation of its terms. *Miller v. Ruzicka*, 111 Neb. 815.

But the decree before us discloses that the claims to the effect that the two mortgages combined were the legal equivalent of the mortgage contemplated in the contract of sale are utterly unfounded. On February 25, 1924, a decree of foreclosure was entered in this very cause in favor of the Federal Trust Company upon the two mortgages in suit for $9,181.39, which includes $143 for insurance premium. According to the stipulations of the contract of sale, we find that the maximum amount due on the mortgage therein referred to and described, with interest from the date of that contract to February 25, 1924, would not exceed $7,855.83. It follows that, in view of the terms of the instruments themselves and the amount of indebtedness evidenced by the two mortgages foreclosed, and which were placed upon the dairy farm after the contract of sale had been made, there was an express and substantial violation of this contract, which, in the absence of "waiver" or "estoppel," entitled Kouba and Kastanek to a rescission of the contract and to the return of all money paid by them constituting part of the purchase price, and to the cancelation of all obligations given because of, or pursuant to, said contract.

"Waiver" and "estoppel" to be available to persons seeking the benefits thereof must be pleaded. No such pleadings appear in the record. It follows, therefore, that, in dismissing the cross-petition of defendants Kouba and Kastanek and by denying them relief, the district court erred.

Accordingly, so much of the decree of the district court entered in this cause on February 25, 1924, which finds for the defendants City National Bank and Commodore N. Beaver, as against the plaintiff Bank of Plymouth, and also that part of said decree finding in favor of the Federal Trust Company, including the entry of the decree of foreclosure of sale, is affirmed.

So much of said decree as determines the ownership of $2,712 in notes to be in O. C. Larson is reversed, and so much of said decree as dismisses the amended cross-petition of defendants Kouba and Kastanek, and denies said defendants relief and awards relief against them, is reversed and remanded, with permission to Kouba and Kastanek and to those opposing relief sought by the defendants last named to file amended pleadings.

AFFIRMED IN PART, AND REVERSED IN PART.