JOSEPH L. FISHER, APPELLEE, V. ORA A. KEELER ET AL., APPELLANTS.

7 N. W. (2d) 659

FILED JANUARY 15, 1943. No. 31432.

*J. J. Harrington* and *Flansburg & Flansburg*, for appellants.

*Julius D. Cronin* and *Frederick M. Deutsch*, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

This is an action in equity instituted by Joseph L. Fisher, plaintiff and appellee, against Ora A. Keeler, defendant and appellant, and other nominal defendants and appellants, the purpose of which is to obtain a decree declaring

a trust in behalf of the plaintiff in a certain 720 acres of real estate in Holt county, Nebraska, which real estate is particularly described in the petition, that the defendant Ora A. Keeler and his wife be required to execute and deliver a deed of conveyance to an undivided one-half interest in the said real estate to the plaintiff, and that title thereto be quieted therein in said plaintiff, and for an accounting.

The decree of the district court was in favor of the plaintiff and in accordance with the prayer of the petition. From the decree the defendants have appealed.

The issues here directly concern only the plaintiff and the defendant Ora A. Keeler, hence the parties will be referred to as plaintiff and defendant, or appellant and appellee.

The historical background of this action is substantially as follows: Some years prior to the incidents involved here the plaintiff became the owner of the real estate described in the petition and he held the title thereto until 1926. In 1926 plaintiff, by deed, conveyed title to the real estate to Henry A. Fisher, his brother. He says that the deed was not absolute, but was given to secure indebtedness by him to his brother, which indebtedness, in whole or in part, still exists. Prior to and into 1925 plaintiff was engaged in the banking business in Ewing, Nebraska. He was an officer and was engaged in the management of the affairs of the bank. He, as well as the bank, became financially involved and the state banking department took over the bank in 1925. It appears rather certain that the plaintiff was insolvent and continued so at least to the month of February, 1934. From 1919 to February, 1934, the defendant was a tenant upon the real estate. At least to 1926 he was the tenant of the plaintiff and plaintiff claims that he so continued to 1934, but defendant insists that after 1926 he became the tenant of Henry A. Fisher and that he accounted for rents for this latter period to the plaintiff as agent for Henry A. Fisher. It may also be stated here that defendant has been in continuous possession since 1934. In

February, 1934, the defendant took title to the real estate by warranty deed from Henry A. Fisher and his wife. The deed was subject to two mortgages, one for $7,000 and one for $2,000. These mortgages were in default and certain taxes against the property had not been paid. The deed was delivered to defendant by plaintiff. Henry A. Fisher and his wife filed a disclaimer of any interest in the land or the controversy and assert that the deed from plaintiff was given as security for indebtedness and that plaintiff was at all times the owner of the land.

It is the contention of the plaintiff that through negotiations between himself and defendant an oral agreement was entered into whereby he agreed to convey title to the real estate to the defendant, whereupon defendant was to attempt to obtain a reduction of the two named mortgages, and in case he was able to obtain a sufficient reduction so that they could be liquidated from the proceeds of a new loan from the Federal Land Bank, then he would procure the new loan, liquidate the old mortgages and then convey an undivided one-half interest in the real estate to the plaintiff. If he could not do so he would convey the entire title to plaintiff, and that pursuant to this agreement he delivered the deed from Henry A. Fisher and his wife in February, 1934, and that thereby a constructive trust came into being. He further contends that the loan from the Federal Land Bank and the other mortgages were liquidated and released, but that defendant has failed and refused to comply with the agreement to convey to him the interest agreed upon.

In the answer the defendant denied the agreement asserted by plaintiff, and contended, among other contentions, that the agreement for reconveyance of the real estate was within the statute of frauds and was not taken out by part performance and that there was not a constructive trust. These contentions will receive first consideration here.

The district court found that the agreement for reconveyance was not within the statute of frauds, or, if it was,

that it was taken out by part performance and also that there was a constructive trust. The findings the defendant says were erroneous.

Preliminary to a discussion of these two assignments of error, it will be stated that we are convinced from the facts set forth in the bill of exceptions and in the light of the disclosed circumstances that the oral agreement contended for by the plaintiff was entered into between the parties. It is conceivable that a landlord would turn over to a valued tenant something which might have some value to the tenant, but could be of no value to the landlord, but we cannot on this record believe that the landlord, bankrupt, heavily involved, and hardly able to obtain sufficient income for his own needs, would take and apply from an income hardly sufficient for his own needs to protect that which had been given without expectation of anything in return. We are supported in this view by the findings of two judges of the district court who presided *en banc* at the trial. It is true that their finding is not conclusive or even binding here, but they saw the witnesses and observed their demeanor when testifying and the result of their observations should not be considered lightly.

"While the law requires this court, in determining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence, where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying." *Johnson v. Erickson,* 110 Neb. 511, 194 N. W. 670. See, also, *Gentry v. Burge,* 129 Neb. 493, 261 N. W. 854; *Higgins v. Adelson,* 131 Neb. 820, 270 N. W. 502; *Ohme v. Thomas,* 134 Neb. 727, 279 N. W. 480.

In the light of our conclusion that an agreement was entered into as claimed by plaintiff, did the trial court properly find that a constructive trust existed?

The latest expression of this court, similar in controlling principle to the case at bar, is found in *Wilcox v. Wilcox,*

138 Neb. 510, 293 N. W. 378, wherein the following was quoted with approval:

"A constructive trust is a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property." Restatement, Trusts, sec. 1e.

"Where the owner of an interest in land transfers it *inter vivos* to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if

"(a) the transfer was procured by fraud, duress, undue influence or mistake." Restatement, Trusts, sec. 44.

The evidence here does not disclose duress, undue influence or mistake. If there was fraud it depended on the state of mind of the defendant at the time the agreement was entered into. By his own statement the defendant, at the time he received the deed in question, had an intention never to reconvey any real estate to the plaintiff. He concealed his true intention from the plaintiff.

Fraud has been defined as follows:

"Fraud in its generic sense, especially as the word is used in courts of equity, comprises all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another." 26 C. J. 1059.

"Fraud, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another." Black's Law Dictionary (3d ed.) p. 813. See, also, 1 Story, Equity Jurisprudence (13th ed.) sec. 187; *Morgan v. Gaiter*, 202 Ala. 492, 80 So. 876; *Jones v. Snyder*, 121 Okla. 254, 249 Pac. 313.

Measured by this standard, the defendant was guilty of fraud in concealing from the plaintiff his true intention to the disadvantage of plaintiff and thereby under the authority of *Wilcox v. Wilcox, supra,* a constructive trust came into being.

The next defense urged, which was resolved by the trial court in favor of the plaintiff, which defendant claims was error, was that the plaintiff is entitled to no relief in equity for the reason that the transfer and the claimed agreement for retransfer of this real estate was in fraud of creditors.

There can hardly be any question about the general rule in such cases. It is well stated in the first paragraph of the syllabus in *Goodman-Buckley Trust Co. v. Poulos,* 124 Neb. 697, 248 N. W. 64, as follows: "It is a general rule that a court of equity will not aid a fraudulent grantor to recover from his grantee property or its proceeds transferred in fraud of creditors."

In the same case with regard to the purpose of the rule, this court quoted the following with approval from 27 C. J. 656: "The object of the rule is not to protect the fraudulent grantee, but to protect society and its purpose cannot be achieved without allowing the grantee to retain his ill-gotten gains."

The appellee insists that on the facts this rule can have no application, since at the time of the transfer he owned nothing of value in the real estate, the mortgages against the land having far exceeded its value, thus there was nothing that could have been obtained for the satisfaction of the claims of creditors.

On this limited aspect we must agree that there was nothing which could have been obtained for the benefit of creditors, but we cannot properly so limit our observation.

On plaintiff's testimony it is clear that the plaintiff was the recipient of the rents from the land, and for the period over which the land was rented for cash the rate varied from $500 to $1,000 a year. Up to the date of the deed of February, 1934, he received the rent, and from that date to

the date of the commencement of this action he seeks an accounting of rents. Can it be said that these rents flowing from the land were of no value? Can it be said that this transfer was not made for the purpose of preventing the rents from becoming available to creditors? The plaintiff does not so state. He said: "At that time I had some judgments against me and I couldn't take it in my name."

The defendant was not a creditor of the plaintiff, and in this connection we are mindful of the rule that the defendant is in no position to assert and show affirmatively that the transfer by plaintiff was in fraud of his creditors. The controlling rule in such circumstances is quoted in *Goodman-Buckley Trust Co. v. Poulos, supra,* as follows: "If plaintiff can make out his case without disclosing the alleged fraud, defendant will not be allowed to show, as a reason why plaintiff should not recover, the fraud in which defendant himself participated." 27 C. J. 657.

The plaintiff, in making his case, did not do so without showing the fraud against his creditors. It is true that his evidence indicated substantially that, while the brother held the title, he held it as security for an indebtedness and in the nature of a preference. Under certain conditions such preferences are not condemned as fraudulent by the law. "A debtor has a right to satisfy or secure one or more of his creditors by the transfer of a reasonable amount of his property as security or payment of a *bona fide* debt; and the debtor has the right to make such preference of his creditors, even though the effect thereof be to defeat, hinder or delay other creditors in the collection of their debts; and this is so even though the parties knew that such would be the effect, and even though the property so taken as security was all the debtor had, if the value of the property so transferred is reasonably proportionate to the amount justly owing to the creditor so preferred, and was taken by the creditor for the sole and only purpose of protecting himself in the collection of his debt." *Blair State Bank v. Bunn,* 61 Neb. 464, 85 N. W. 527. See, also, *Costello v. Chamberlain,* 36 Neb. 45, 53 N. W. 1034; *Bank of Ply-*

*mouth v. Ritchey,* 115 Neb. 493, 213 N. W. 587; *Nebraska Wheat Growers Ass'n v. Johnson,* 130 Neb. 99, 264 N. W. 165; *Luikart v. Tidrick,* 126 Neb. 398, 253 N. W. 414.

The conveyance to defendant was not a preference, hence this rule, despite the contention therefor, can have no application to this controversy.

The clear effect of plaintiff's evidence was that the transfer to defendant, among other things, was to prevent judgment creditors from obtaining the avails of the land and the increase in value, if any, over the encumbrances upon the land. In making his own *prima facie* case he demonstrated his own fraud against his creditors. Since this is so, the plaintiff has no recourse in a court of equity and he will be left where, by his own acts, he has placed himself.

Since we have come to this conclusion on the errors discussed, no reason exists for discussion of other errors assigned or the further contentions advanced by the parties.

The decree of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.